UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

GARY SASS,

                            Plaintiff,

                                                                       **MEMORANDUM & ORDER**

           v.                                                    10 CV 4079 (MKB)

MTA BUS COMPANY,

                            Defendant.

----------------------------------------------------------------x

MARGO K. BRODIE, United States District Judge:

      Plaintiff Gary Sass brings the above-captioned retaliation action against his former employer Metropolitan Transportation Authority Bus Company ("MTA Bus") under Title VII of the Civil Rights Act of 1964 ("Title VII"), New York Executive Law § 296, and New York City Human Rights Law, Administrative Code § 8-107. Plaintiff was employed as a bus maintenance supervisor at MTA Bus. According to Plaintiff, he was terminated in retaliation for telling MTA Bus investigators in 2009 that he had reported to his supervisor in 2008 a bus roster with Nazi symbols and his supervisor failed to take any action. Defendant has moved for summary judgment. The Court heard oral argument on Defendant's motion on July 27, 2012. For the reasons set forth below, Defendant's motion for summary judgment is denied.

**I.    Background**

      In January 2007, Plaintiff was hired by MTA Bus as a bus mechanic. (Def. 56.1 ¶ 1.) Several months later, Plaintiff was promoted to the position of bus maintenance supervisor at the College Point depot. (*Id*. at ¶ 2.) Plaintiff, who is Jewish, alleges that in early March 2008, he discovered a MTA Bus roster with two Nazi symbols printed on the roster and he shared the

document with fellow supervisor Ira Lepzelter; Plaintiff then wrote an irregularity report and gave the report and a copy of the roster to his immediate supervisor Charles Miller, but Miller failed to take any action related to the report. (Pl. 56.1 ¶¶ 24–26.)

On or about October 23, 2009, Plaintiff gave Ganesh Totaram, also a maintenance supervisor, the roster with the Nazi symbols. (Def. 56.1 ¶ 4.) Totaram told Plaintiff that he would submit the roster to management. (*Id*. at ¶ 5.) According to MTA Bus, both Totaram and Plaintiff altered the roster sheet, changing the header to delete Plaintiff's handwriting from the document. (*Id*. at ¶ 6; Efron Decl Ex. B (Totaram Dep. 15:14–16:17).)[1] According to Plaintiff, only Totaram altered the document. (Pl. 56.1 ¶¶ 5, 15.) Both Parties agree that after the document was altered, Totaram placed the altered roster in an envelope and submitted it to Robert Bruno, General Superintendent for Maintenance at the College Point depot. (Def. 56.1 ¶ 7.) Bruno brought the document to the attention of Robert Picarelli, MTA Bus's Chief Officer of Operation Improvement and Internal Studies. (*Id.* at ¶ 8.)

On October 29, 2009, Picarelli went to College Point depot to investigate the roster. (*Id*. at ¶ 9.) During the investigation, Picarelli interviewed Totaram. (*Id*. at ¶ 10.) After the Totaram interview, Plaintiff was interviewed and initially stated that the roster had been found during his preceding shift. (*Id*. at ¶ 11.) Plaintiff was shown the altered roster and stated that the roster was the one that he found. (*Id*. at ¶ 12.) A short time later, Plaintiff overheard Picarelli and Bruno commenting that the bus numbers on the roster did not correspond with the buses actually assigned at that time to the College Point depot. (*Id.* at ¶ 13.) Plaintiff then informed Picarelli that the version of the roster in Picarelli's possession was not the original and gave him the original version with the word "Rims" in Plaintiff's handwriting. (*Id.* at ¶ 14.) Plaintiff also told

---

[1] Plaintiff had written "Rims" at the top of the roster.

2

Picarelli that he had previously given the document to Miller in 2008, who failed to take action. (Pl. 56.1 ¶¶ 44–46; Def's Reply Br. 6.)

Picarelli prepared a report and recommended that disciplinary action be taken against both Plaintiff and Totaram, but he did not recommend the type of action to be taken. (Def. 56.1 ¶ 16; Decl. Efron Ex. C (Picarelli Dep. 44:8–20).) MTA Bus's Senior Director for Labor Relations, David Franceschini, drafted disciplinary charges against Plaintiff and Totaram. (Def. 56.1 ¶ 17.) Plaintiff and Totaram were charged with altering evidence, falsification of a company document, making false statements to management, gross misconduct, and conduct unbecoming of an MTA Bus employee. (*Id*. at ¶ 18.) On or about November 20, 2009, Arturo Hidalgo, an assistant general manager, conducted a proceeding on the charges.[2] (Decl. Efron Ex. A (Sass Dep. 130:1–25 ).) Plaintiff was represented by a union representative, Robert Elznic, at the proceeding. (Def. 56.1 ¶¶ 19–20.) At the conclusion of the proceeding, Plaintiff was fired and Totaram was given a 30-day suspension and a final warning. (*Id*. at ¶ 21.)

## II. Discussion

### a. Standard of Review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011). The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."

---

[2] The parties dispute whether this proceeding can be properly referred to as a "hearing." Defendant refers to this proceeding as a "hearing." (Def. 56.1 ¶ 20.) Plaintiff objects and states that the proceeding is better classified as a "second or third step [in] a grievance process." (Def. 56.1 ¶¶ 20, 59–60.) Both parties agree that Plaintiff was represented by a union representative at the proceeding, charges against Plaintiff were discussed at the proceeding, and a penalty of dismissal was imposed on Plaintiff at the conclusion of the proceeding.

*Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added) (citations omitted). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000). The Second Circuit has made clear that while summary judgment is available in discrimination cases where there are no genuine issues of material fact, "an extra measure of caution is merited" when considering summary judgment in discrimination cases because "direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006).

    **b. Analysis**

Claims of retaliation for engaging in protected conduct under Title VII are examined under the *McDonnell Douglas* burden shifting test. *McDonnell Douglas Corp. v. Green*, 411 U.S. 742, 802 (1973); *see Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010).[3] Under the test, "[f]irst, the plaintiff must establish a *prima facie* case of

---

[3] Courts also use the *McDonnell Douglas* burden shifting analysis for claims under New York State and New York City law. However, under New York City law, more actions are considered retaliation than under state and federal law. *Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 723 (2d Cir. 2010) ("New York State courts and district courts in this Circuit have concluded . . . that the retaliation inquiry under the [New York City Human Rights Law ("NYCHRL")] is 'broader' than its federal counterpart." (citing *Williams v. N.Y.C.*

4

retaliation. If the plaintiff succeeds, then a presumption of retaliation arises and the employer must articulate a legitimate, non-retaliatory reason for the action that the plaintiff alleges was retaliatory. If the employer succeeds at the second stage, then the presumption of retaliation dissipates and the plaintiff must show that retaliation was a substantial reason for the complained-of action." *Fincher*, 604 F.3d at 720 (citations omitted); *see also Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 n.6 (2d Cir. 2011) (discussing the burden shifting analysis in retaliation context); *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (same).

### i. Prima Facie Case

To establish a prima facie case, a plaintiff must prove by the preponderance of evidence "(1) that he engaged in protected [activity] under [the anti-discrimination statutes], (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." *Fincher*, 604 F.3d at 720 (alteration in original) (quoting *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205–06 (2d Cir. 2006)). However, the burden at the summary judgment

---

*Hous. Auth.*, 872 N.Y.S.2d 27, 34 (App. Div. 2009))); *Sotomayor v. City of New York*, No. 10–CV–3411, 2012 WL 1889780, at *29 (E.D.N.Y. May 24, 2012) ("The essential elements of a retaliation claim under the [NYCHRL] are the same [as under Title VII, the Age Discrimination in Employment Act ("ADEA"), the New York State Human Rights Law ("NYSHRL"), and § 1983]. Yet, the employer's conduct need not be as severe to trigger liability. Unlike under federal and state law, the employer's actions need not be 'materially adverse' to the plaintiff, but merely 'reasonably likely to deter a person from engaging in protected activity.'" (citations omitted)); *Germain v. Cnty. of Suffolk*, No. 07-CV-2523, 2009 WL 1514513, at *8 (E.D.N.Y. May 29, 2009) ("Employment discrimination and retaliation claims under [NYSHRL] are analyzed under the same framework as claims brought pursuant to Title VII." (citing *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714–16 (2d Cir.1996))); *Lambert v. McCann Erickson*, 543 F. Supp. 2d 265, 277 (S.D.N.Y. 2008) ("Employment discrimination claims brought under the NYSHRL and NYCHRL are evaluated under the same standards that govern Title VII.").

5

stage for Plaintiff is "'minimal' and '*de minimis*'" and "the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Jute*, 420 F.3d at 173 (citations omitted). For the reasons set forth below, Plaintiff has established a prima facie case.

### 1. Protected Activity

Plaintiff has met the protected activity prong of the test. Plaintiff alleges he was fired for complaining to MTA Bus investigators that his supervisor had failed to act on his earlier report of the roster with the Nazi symbols. (Pl. Opp'n 7 n. 5; Efron Decl. Ex. A (Sass Dep. 110: 5-117:12).) Under Title VII, protected activity includes both "opposing discrimination proscribed by the statute and . . . participating in Title VII proceedings." *Jute*, 420 F.3d at 173; *see also Tepperwien*, 663 F.3d at 567 (Title VII "prohibits an employer from taking 'materially adverse' action against an employee because the employee opposed conduct that Title VII forbids or the employee otherwise engaged in protected activity." (citations omitted)); *McMenemy v. City of Rochester*, 241 F.3d 279, 283 (2d Cir. 2001) ("[Title VII] prohibits discrimination by an employer against an employee who 'has opposed any practice made an unlawful employment practice' by Title VII or who has 'participated in any manner in an investigation, proceeding, or hearing' under Title VII." (citations omitted)). In order to oppose discrimination, Plaintiff need not have filed a formal complaint as long as he complains of discriminatory conduct. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) ("[T]he law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection, this notion of 'opposition' includes activities such as 'making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges.'"

(quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990))); *see also Bennett v. Hofstra Univ.*, 842 F. Supp. 2d 484, 500 (E.D.N.Y. 2012) (Title VII does not require a formal complaint.); *Martin v. State Univ. of N.Y.*, 704 F. Supp. 2d 202, 227 (E.D.N.Y. 2010) ("It is clearly established that 'informal complaints to supervisors constitute protected activity under Title VII.'" (citations omitted)); *Russell v. Cnty. of Nassau,* 696 F. Supp. 2d 213, 237 (E.D.N.Y. 2010) ("Indeed, Title VII's protection against retaliation extends to an employee who speaks out about discrimination not on her own initiative, but in answering questions during an employer's internal investigation if for no other reason than . . . [w]hen an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." (alterations in original) (quoting *Crawford v. Metro. Gov't of Nashville and Davidson Cnty. Tenn.*, 555 U.S. 271, 276 (2009)) (internal quotation marks omitted)).

Furthermore, when making a complaint, it is not necessary that the conduct was actually prohibited by Title VII, but only that the plaintiff had a "good faith belief" that such conduct was prohibited. *La Grande v. DeCrescente Distrib. Co.*, 370 F. App'x. 206, 212 (2d Cir. 2010) (summary order) ("It is well-established that a 'plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law.'" (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002))); *Kanhoye v. Altana Inc.*, 686 F. Supp. 2d 199, 206 (E.D.N.Y. 2009) ("'An employee is privileged to report and protest workplace discrimination, whether that discrimination be actual or reasonably perceived.' Title VII therefore prohibits an employer from retaliating against an employee for opposing the employer's potentially discriminatory practices." (quoting

7

*Matima v. Celli,* 228 F.3d 68, 78 (2d Cir. 2000))). Defendant contends that it does not believe that Plaintiff had a good faith belief when he told investigators that he previously turned in the roster to Miller in 2008, when he first found said roster. (Def. Reply 3–4.) According to Defendant, MTA Bus investigators believed that Plaintiff was making a false statement in 2009, when he told investigators that he had reported the roster to Miller in 2008. (*Id.*) However, Plaintiff's sworn deposition testimony is that he completed an irregularity report and gave the report along with a copy of the roster to Miller in 2008. (Efron Decl. Ex. A (Sass Dep. 110:5–117:12).)

Since Plaintiff's testimony is evidence that can be considered by a jury, there is evidence in the record that Plaintiff did give Miller the roster in 2008. (*Id.*) Plaintiff, therefore, had a good faith belief that he was complaining of activity prohibited by Title VII in 2009 when he told the investigators that he reported the roster to Miller in 2008 and Miller failed to act. *See, e.g. Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010) (finding that plaintiffs' sworn affidavits were sufficient evidence to survive a summary judgment motion). Thus, viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has established that he engaged in protected activity.

### 2. MTA's Knowledge of the Protected Activity

Construing all the evidence and drawing all inferences in Plaintiff's favor, Plaintiff has met the second prong of the prima facie case. "In order to satisfy the requirement of employer knowledge, an employee must have made it clear that she was opposing activity made illegal by Title VII." *Risco v. McHugh*, No. 10-CV-6314, 2012 WL 2161115, at *20 (S.D.N.Y. June 14, 2012). It is not necessary that Plaintiff prove that the specific actors knew of the protected activity as long as Plaintiff can demonstrate general corporate knowledge. *See Gordon v. N.Y.C.*

8

*Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000) ("A jury, however, can find retaliation even if the agent denies direct knowledge of a plaintiff's protected activities, for example, so long as the jury finds that the circumstances evidence knowledge of the protected activities or the jury concludes that an agent is acting explicitly or implicit upon the orders of a superior who has the requisite knowledge."); *Trivedi v. N.Y.S. Unified Court Sys. Office of Court Admin.*, 818 F. Supp. 2d 712, 736 (S.D.N.Y. 2011) ("A plaintiff need not prove that the specific actors within an organization were aware that the plaintiff made allegations of retaliation to make out a *prima facie* retaliation claim; rather, 'general corporate knowledge that the plaintiff has engaged in a protected activity' is sufficient." (citations omitted)).

     Defendant concedes that Plaintiff told investigators in 2009 that he had previously provided the roster to Miller in 2008. (Def Reply 6.) However, Defendant argues that Plaintiff's statement was false, as Plaintiff was found to be not credible by MTA Bus investigators. Therefore, Defendant further argues, it had no knowledge of any protected activity when it fired Plaintiff because Plaintiff had not engaged in any protected activity. (*Id.*) In contrast, Plaintiff claims that he was fired in retaliation for asserting in 2009 that he made a credible report in 2008 and Miller failed to take any action. Thus, according to Plaintiff, he was fired when Defendant had explicit knowledge of Plaintiff's protected activity. (Pl. Opp'n 7 n.5.) Although MTA Bus does not believe Plaintiff reported the roster to Miller in 2008 and therefore engaged in protected activity when he told investigators in 2009 that he did make such a report, this is a factual issue to be decided by the jury. *Konits v. Valley Stream Cent. High Sch. Dist.*, 394 F.3d 121, 124 (2d Cir. 2005) (Summary judgment is used "sparingly" "where the employer's state of mind is at issue . . . because 'careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required inference of discrimination.'" (quoting *Graham v. Long Island R.R.*, 230

9

F.3d 34, 38 (2d Cir. 2000))). As discussed above, the Court has already determined that Plaintiff has sufficiently established that he engaged in protected activity, when he told investigators in 2009 that he reported the roster to Miller in 2008 and Miller failed to act. Thus, viewing the evidence in the light most favorable to Plaintiff, Plaintiff has also established that MTA Bus had knowledge of his protected activity.

### 3. Adverse Employment Action

Plaintiff also satisfies the adverse employment action prong. Plaintiff was terminated at the conclusion of MTA's investigation in November 2009. (Def. 56.1 ¶ 21.) Being fired is an adverse employment action. *Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2004) ("[Plaintiff] suffered an adverse employment action when he was fired."); *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("[Plaintiff]'s probation and termination constituted adverse employment actions.").

### 4. Casual Connection

Drawing all inferences in favor of Plaintiff, Plaintiff also meets the causal connection prong of the test. "[A] plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110–11 (2d Cir. 2010) (quoting *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001)); *see also Feingold*, 366 F.3d at 156 ("[T]he requirement that [Plaintiff] show a causal connection between his complaints and his termination is satisfied by the temporal proximity between the two."); *Treglia*, 313 F.3d at 720 ("We have held that a close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation."). There is no brightline rule for how

10

long after a plaintiff has engaged in the protected activity that the adverse action must have occurred to benefit from the inference but generally courts measure the time in months. *See, e.g. Gorzynski*, 596 F.3d at 110–11 (The Second Circuit held that it has not established "the outer limits beyond which a temporal relationship is too attenuated to establish causation[;]" however, "five months is not too long to find the causal relationship[.]"); *Smith v. Town of Hempstead Dept. of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 457 (E.D.N.Y. 2011) ("With regard to the establishment of a prima facie case through temporal proximity, the Second Circuit has not drawn a bright line as to how closely an adverse employment action must follow protected activity to imply that retaliation has taken place." (citing *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009)); *Laudadio v. Johanns*, 677 F. Supp. 2d 590, 614 (E.D.N.Y. 2010) ("There is no bright-line beyond which a temporal relationship is too attenuated to prove causation." (citations omitted)).

Plaintiff has alleged that in October 2009, he participated in the report of the roster, and that during the subsequent investigation he told investigators that his supervisor had failed to investigate the roster back in 2008. Plaintiff was fired at the conclusion of the investigation on November 20, 2009. The temporal proximity between the investigation and Plaintiff's termination is sufficient to establish a causal connection for a prima facie case. *See, e.g. Gorzynski*, 596 F.3d at 110–11 (Terminating an employee one month after he engaged in protected activity was sufficient to establish a prima facie case.); *Gorman-Bakos*, 252 F.3d at 555 ("[F]our months elapsed between [the] events[,]" which is sufficient "temporal proximity" "to support an allegation of a causal connection strong enough to survive a summary judgment motion."); *Conklin v. Cnty. of Suffolk*, No. 09-CV-3014, 2012 WL 1560390, at *15–16 (E.D.N.Y. May 3, 2012) ("[A] time frame of only five and a half months" is "such a limited time

frame that a *prima facie* case is established."); *Martin*, 704 F. Supp. 2d at 230 ("[T]he court is satisfied that the three-month interval is not too temporally remote for a reasonable jury to infer causation.").

Furthermore, a plaintiff may also demonstrate a causal connection by showing that similarly situated employees were treated differently than the plaintiff. *Walker v. N.Y.C. Dep't. of Corr.*, No. 01-CV-1116, 2008 WL 4974425, at *26 (S.D.N.Y. Nov. 19, 2008) ("A plaintiff can establish retaliatory animus or causation through circumstantial evidence, including evidence that she was treated differently from another employee who engaged in similar conduct."); *see also Hicks*, 593 F.3d at 170 ("[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." (quoting *Gordon*, 232 F.3d at 117)); *St. Louis v. N.Y.C. Health and Hosp. Corp.*, 682 F. Supp. 2d 216, 235 (E.D.N.Y. 2010) ("[C]ausation can be established by showing that the retaliatory action was close in time to the protected activity; that other similarly situated employees were treated differently; or with direct proof of retaliatory animus." (quoting *Reed v. v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1178 (2d Cir. 1996))); *Laudadio*, 677 F. Supp. 2d at 613 ("[P]laintiff can prove causation not only directly, by showing employer's retaliatory animus towards the plaintiff, but also indirectly, either by showing temporal proximity (that the retaliatory treatment 'followed closely' the protected activity), or 'through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct.'" (citations omitted)); *Sulehria v. City of New York*, 670 F. Supp. 2d 288, 315 (S.D.N.Y. 2009) ("Causation for purposes of a retaliation claim may be shown by direct proof of

retaliatory animus by those undertaking the adverse actions or by circumstantial evidence, including by demonstrating that other employees similarly situated but who did not engage in protected conduct were treated more favorably, or, notably, by showing that the protected activity was followed rapidly by the adverse action.").

The record establishes that a similarly situated employee was treated differently. Totaram, like Plaintiff, altered the roster and at first told MTA Bus investigators that the roster was recently discovered.[4] (Pl. 56.1 ¶¶ 29–34.) However, unlike Plaintiff, when it was established that the roster was from 2008, Totaram did not allege that in 2008 he had reported the roster to a supervisor and the supervisor had failed to act on the report of the roster. (Pl. 56.1 ¶ 35.) Totaram was given a 30-day suspension, and Plaintiff was fired, despite the fact that they both initially lied about when the roster had been found. (Def. 56.1 ¶ 21.) The fact that Totaram, a similarly situated employee, received a far less severe discipline for similar conduct is circumstantial evidence of retaliation. *See, e.g., Walker,* 2008 WL 4974425, at *26 ("As Plaintiff is able to show that Parker, a similarly-situated employee, engaged in substantially the same conduct and received far less severe discipline, Plaintiff can establish that her discipline was a result of the [defendant's] retaliatory animus. [Plaintiff] succeeds in making out her prima facie case of retaliation based on the [defendant's] discipline of her."); *Wolf v. Bd. of Educ. of City of N.Y.*, 162 F. Supp. 2d 192, 199 (S.D.N.Y. 2001) (Plaintiff "established a causal connection based on the disparate treatment afforded her."). Thus, viewing the evidence in the light most favorable to Plaintiff, he has established a causal connection between the protected activity and his termination.

---

[4] Plaintiff asserts that only Totaram actually altered the report and Totaram decided to report the roster of his own initiative. (Pl. 56.1 ¶¶ 4, 28–29.)

13

### ii.     Proffered Legitimate Reason for Adverse Action

Since Plaintiff has established a prima facie case of retaliation, a presumption of retaliation arises and Defendant must articulate a legitimate reason for Plaintiff's termination. *Fincher*, 604 F.3d at 720. Defendant argues that Plaintiff was terminated because he lied during the investigation. Plaintiff does not dispute that lying during an investigation can be a legitimate reason to fire an employee. (Pl. Opp'n 5–7.) Thus, Defendant satisfies its burden. Plaintiff must, therefore, meet his burden of demonstrating that the legitimate reason proffered by Defendant is pretext. *Fincher*, 604 F.3d at 720.

### iii.    Pretext

Plaintiff has met his burden of establishing pretext, given the summary judgment de minimis burden standard. *See Jute*, 420 F.3d at 173. First, the strong temporal connection is not only important at the prima facie stage but also is evidence of pretext. *See, e.g. id.* at 180 ("[Plaintiff] has proffered evidence supporting a strong temporal connection between her involvement in protected activity on the one hand, and instances (albeit, not actionable) of retaliation on the other. As we must construe the record in the light most favorable to [Plaintiff] at this stage of the case, 'we conclude that there is a sufficient basis for a trier of fact to doubt the persuasiveness of [Defendant's] proffered evidence and ultimately to find that the [legitimate, non-retaliatory] reasons offered by [Defendant] . . . were pretextual.'" (alteration in original) (citations omitted)).

Second, Plaintiff's demonstration that a similarly situated individual was treated differently is also evidence of pretext. *Graham*, 230 F.3d at 43 ("A showing that similarly situated employees . . . received more favorable treatment can also serve as evidence that the employer's proffered legitimate, non-discriminatory reason for the adverse job action was a

pretext[.]"). The fact that Totaram was only suspended for 30 days and Plaintiff was fired is enough at this stage to create a material issue of fact to be decided by a jury. Defendant contends that Totaram was not similarly situated because the disciplinary hearing officer decided Totaram had been "manipulated" by Plaintiff "to believe that [the roster sheet] had been found on this particular day when it had not." (Efron Decl. Ex. E (Hildalgo Dep. 14:12–18).) Plaintiff contends that Totaram knew the roster sheet was not newly discovered; thus, Totaram was not any less culpable than Plaintiff.[5] (Pl. 56.1 ¶¶ 4, 28–29.) There is enough evidence in the record for the issue to be decided by a jury. *See, e.g., Ibok v. Sec. Indus. Automation Corp.*, 369 F. App'x. 210, 214 (2d Cir. 2010) (summary order) (allowing a case to go to a jury where "a genuine issue of material fact as to whether the justification for [Plaintiff']s firing [was] pretextual" because "[a]lthough the defendants have offered a legitimate business explanation for" some disciplinary action it did not "necessarily explain why [Plaintiff] was not retained in some capacity."); *Graham*, 230 F.3d at 39 ("Whether two employees are similarly situated ordinarily presents a question of fact for the jury." (citing *Taylor v. Brentwood Union Free Sch. Dist.*, 143 F.3d 679, 684 (2d Cir. 1998))).

Furthermore, "[a] plaintiff can sustain this burden by proving that 'a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause[;] if the employer was motivated by retaliatory animus, Title VII is violated even if there were

---

[5] Because both Plaintiff and Totaram lied during the investigation, Plaintiff's case is distinguishable from *E.E.O.C. v. Total Sys. Services, Inc.*, 221 F.3d 1171 (11th Cir. 2000), a case Defendant relies on in its motion. In *Total Systems Services*, the similarly situated individuals participated in an investigation but the plaintiff was the only one who engaged in misconduct during the investigation by lying and thus the plaintiff was unable to show that the defendant's stated reason for terminating plaintiff (her lie during the investigation) was pretext. 221 F.3d at 1175–76. Here, both Plaintiff and Totaram were charged with engaging in the same misconduct during the investigation by changing the original roster, giving management an altered copy, and stating it was newly found; thus, Plaintiff has established an inference of retaliation from their different treatment. (Efron Decl. Ex. B (Totaram Dep. 15:11–16:17); Pl. 56.1 ¶¶ 30–34.)

15

objectively valid grounds for the [adverse employment action].'" *Hicks*, 593 F.3d at 164–65 (quoting *Sumner*, 899 F.2d at 209)); *see also Terry v. Ashcroft*, 336 F.3d 128, 140–41 (2d Cir. 2003) ("Title VII is violated when 'a retaliatory motive plays a part in adverse employment actions toward an employee, whether or not it was the sole cause.'" (quoting *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993))). Thus, viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in Plaintiff's favor, there is sufficient evidence in the record to establish that retaliation was at least a motivating factor in Plaintiff's firing and Defendant's proffered reason was pretext.

### III. Conclusion

For the reasons discussed above, Defendant's motion for summary judgment is denied.

SO ORDERED.

                                             s/MKB
                                       MARGO K. BRODIE
                                       United States District Judge

Dated: October 1, 2012
       Brooklyn, New York