UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------

GARY SASS,

                                    Plaintiff,          **MEMORANDUM & ORDER**
                                                        10-CV-4079 (MKB)

                    v.

MTA BUS COMPANY,

                                    Defendant.
----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

        Plaintiff Gary Sass commenced the above-captioned action against his former employer

Metropolitan Transportation Authority Bus Company ("MTA Bus") for violations of Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York State Human

Rights Law, N.Y. Exec. Law § 296 ("NYSHRL") and the New York City Human Rights Law,

N.Y.C. Admin. Code § 8-107 ("NYCHRL").  After a jury trial, on June 20, 2013, the jury found

Defendant liable and awarded damages in the amount of $358,300.  Plaintiff moved for equitable

relief and attorneys' fees.  (Docket Entry No. 47.)  Four days after the verdict, on June 24, 2013,

the Supreme Court of the United States issued a decision in *University of Texas Southwest*

*Medical Center v. Nassar* changing the standard of proof necessary to establish a retaliation

claim pursuant to Title VII.  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. ---, ---, 133 S. Ct.

2517, 2533 (2013).  Based on *Nassar*, Defendant moved for judgment as a matter of law, or in

the alternative, for a new trial.  (Docket Entry No. 50.)  By Memorandum and Order dated

February 14, 2014, the Court granted Defendant's motion for a new trial, and denied as moot

Plaintiff's motion for damages and attorneys' fees.  (Docket Entry No. 60.)  Plaintiff moved for

reconsideration on the ground that the Court's order did not address Plaintiff's claim under the

New York City Human Rights Law, since *Nassar* did not change the standard for establishing liability on a retaliation claim brought under that statute. (Docket Entry No. 61.) For the reasons set forth below, Plaintiff's motion for reconsideration is granted. Upon reconsideration, the Court (1) adheres to its prior ruling granting Defendant's motion for a new trial as to Plaintiff's Title VII claim, (2) finds that Defendant is entitled to a new trial as to Plaintiff's NYSHRL claim, (3) denies Defendant's motion for a new trial as to Plaintiff's NYCHRL claim, and (4) grants in part and denies in part Plaintiff's motion for equitable relief, damages, attorneys' fees and costs.

## I. Background

The Court assumes familiarity with the underlying facts and procedural history of this case as set forth in the Court's earlier decisions. *See Sass v. MTA Bus Co.*, --- F. Supp. 2d ---, ---, 2014 WL 585418, at *4 (E.D.N.Y. Feb. 14, 2014); *Sass v. MTA Bus Co.*, No. 10-CV-4079, 2012 WL 4511394, at *1–2 (E.D.N.Y. Oct. 2, 2012). The Court summarizes the facts necessary to the resolution of the instant motion.

According to Plaintiff, he was terminated from his position as a bus maintenance supervisor at MTA Bus in retaliation for telling MTA Bus investigators that he previously reported to his supervisor that he found a bus roster with Nazi symbols superimposed on it, and that his supervisor failed to take any action. On June 17, 2013, the Court commenced a jury trial on Plaintiff's retaliation claim. After the presentation of all the evidence, the Court instructed the jury that in order to establish liability on Plaintiff's retaliation claim, Plaintiff had to prove that "one or more of his protected activities played an important role in [D]efendant's decision to terminate [P]laintiff," and that "[P]laintiff's participation in protected activities were more likely than not a motivating factor in [D]efendant's termination of [P]laintiff." (Trial Transcript ("Trial

Tr."), Docket Entry Nos. 57–59, 586:16–24.)  On June 20, 2013, the jury returned a verdict in

favor of Plaintiff.  The jury awarded $0 in compensatory damages, $252,300 in back pay, and

$106,000 in front pay.  (*Id.* at 618:3–15; *see also* Jury Verdict Sheet, Docket Entry No. 46.)

Plaintiff subsequently moved for reinstatement, pension contributions, back pay and attorneys'

fees.  (Docket Entry No. 47.)

On June 24, 2013, the Supreme Court of the United States issued a decision in *Nassar*

holding that "Title VII retaliation claims must be proved according to traditional principles of

but-for causation," expressly rejecting the motivating-factor standard.  *Nassar*, 570 U.S. at ---,

133 S. Ct. at 2533.  Based on the Supreme Court's *Nassar* decision, Defendant renewed its

motion pursuant to Rule 50 of the Federal Rules of Civil Procedure for judgment as a matter of

law.  Defendant also moved, in the alternative, for an order vacating the verdict and granting a

new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure.  Defendant argued that

*Nassar* applied retroactively to the pending case, and that the charge to the jury that provided for

a finding of liability if retaliation was a motivating factor in Plaintiff's termination was therefore

erroneous.  (Defendant's Memorandum in Support of Motion for Judgment as a Matter of Law

("Def. Rule 50 Mem."), Docket Entry No. 50, 13–14.)  Defendant acknowledged that while the

jury's verdict could arguably be upheld under the NYCHRL as claims under NYCHRL are to be

given a liberal construction, independent of Title VII, (*id.* at 14), because there is textual and

substantive similarity between NYCHRL and Title VII, the Court should find that the new

standard for establishing causation announced in *Nassar* applies to Plaintiff's NYCHRL claim as

well.  (*Id.* at 14–15.)

Plaintiff opposed Defendant's motion on the grounds that (1) Defendant failed to object

to the jury instruction on Plaintiff's retaliation claim, (Plaintiff's Memorandum in Opposition to

Motion for Judgment as a Matter of Law ("Pl. Rule 50 Opp'n"), Docket Entry No. 55, at 4–5), (2) even assuming that *Nassar* applied retroactively, any error in the jury instruction was harmless, as the jury would have found that Plaintiff's protected activity was the but-for cause of his termination, (*id*. at 6–7), and (3) under the prevailing interpretation requiring employment discrimination claims brought pursuant to NYCHRL to be analyzed separately from claims brought pursuant to federal law, the standard for assessing causation in retaliation claims under NYCHRL would likely remain unaffected by *Nassar*, (*id*. at 9–10). Plaintiff argued that the Court should reject Defendant's argument that New York courts would likely interpret NYCHRL consistently with the revised interpretation of Title VII mandated by *Nassar*. (*Id*. at 10.)

The Court denied Defendant's motion for judgment as a matter of law, finding that the evidence presented at trial could support a finding of liability for retaliation even under the more stringent standard announced in *Nassar*. *See Sass*, --- F. Supp. 2d at ---, 2014 WL 585418, at *4. The Court granted Defendant's motion for a new trial, finding that "the new standard for retaliation [announced by *Nassar*] applies retroactively to all cases still open on direct review, including the case before this Court," and that the mixed-motives instruction to the jury at trial was contrary to the new standard. *Id*. at *6. The Court did not address Plaintiff's claim regarding *Nassar*'s applicability to NYCHRL. Plaintiff moved for reconsideration, noting that the Court did not directly address Plaintiff's argument with respect to his NYCHRL claim. (Pl. Mem. 1.)

## II. Discussion

### a. Standard of Review

#### i. Reconsideration

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the

court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also* Local Civ. R. 6.3 (The moving party must "set[] forth concisely the matters or controlling decisions which counsel believes the Court has overlooked."); *Smith v. New York City Dep't of Educ.*, 524 F. App'x 730, 734 (2d Cir. 2013). It is thus "well-settled" that a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)), *as amended* (July 13, 2012). A motion for reconsideration is "neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have previously been made." *Simon v. Smith & Nephew, Inc.*, --- F. Supp. 2d ---, ---, 2014 WL 1257780, at *1 (S.D.N.Y. Mar. 26, 2014) (citation and internal quotation marks omitted). In order to prevail on a motion for reconsideration, "the moving party must demonstrate that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion." *Lichtenberg v. Besicorp Grp. Inc.*, 28 F. App'x 73, 75 (2d Cir. 2002) (citations and internal quotation marks omitted).

### ii.  Rule 59

Pursuant to Rule 59 of the Federal Rules of Civil Procedure, "[a] court may grant a new trial 'for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . .'" *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417 (2d Cir. 2012) (quoting Fed. R. Civ. P. 59(a)(1)(A)), *cert. denied*, 568 U.S. ---, 133 S. Ct. 789 (2012). Grounds for granting a new trial include verdicts that are against the weight of the evidence, *Manley v.*

*AmBase Corp.*, 337 F.3d 237, 245 (2d Cir. 2003), substantial errors in the admission or rejection

of evidence, *O & G Indus., Inc. v. Nat'l R.R. Passenger Corp.*, 537 F.3d 153, 166 (2d Cir. 2008),

and non-harmless errors in jury instructions, *United States v. Kozeny*, 667 F.3d 122, 130 (2d Cir.

2011), and verdict sheets, *Armstrong ex rel. Armstrong v. Brookdale Univ. Hosp. & Med. Ctr.*,

425 F.3d 126, 136 (2d Cir. 2005). "A motion for a new trial ordinarily should not be granted

unless the trial court is convinced that the jury has reached a seriously erroneous result or that the

verdict is a miscarriage of justice." *Snyder v. N.Y.S. Educ. Dep't*, 486 F. App'x 176, 177 (2d Cir.

2012) (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 911 (2d Cir. 1997)), *cert.

denied*, 568 U.S. ---, 133 S. Ct. 653 (2012).

      **b.**    **Reconsideration**

      Plaintiff moves for reconsideration, arguing that under controlling law, the Court's

instruction with respect to his NYCHRL claim was not erroneous, and that this argument was not

addressed by the Court in its Memorandum and Order of February 14, 2014. Plaintiff is correct

that the Court's decision of February 14, 2014, only addressed the standard for establishing

liability in a retaliation claim under Title VII. In his opposition to Defendant's motion for

judgment as a matter of law or a new trial, Plaintiff argued that, even if *Nassar* applied

retroactively, "the court's instruction on [P]laintiff's city and state law claims was not

erroneous." (Pl. Rule 50 Opp'n 9.) In the instant motion, Plaintiff argues that "[u]nder

controlling law, the Court's instruction to the jury with respect to [P]laintiff's City law claim was

correct; therefore the verdict can be sustained, and any error with respect to [P]laintiff's federal

law claim was harmless."[1] (Pl. Recons. Letter, Docket Entry No. 60, 1.) Plaintiff's motion for

---

[1] Although Plaintiff notes that the Court did not address "[P]laintiff's argument with
respect to his State and City law claims," (Pl. Recons. Letter 1), Plaintiff only argues that the

reconsideration is therefore based on data that the Court overlooked that "might reasonably be expected to alter the conclusion reached by the court." *See Shrader*, 70 F.3d at 257. Accordingly, reconsideration is warranted to address Plaintiff's argument that the Court's jury instruction as to Plaintiff's NYCHRL claim was proper and was not changed by the Supreme Court's decision in *Nassar*.

### c. Defendant's Rule 59 Motion

Defendant moved for a new trial on the basis that the standard for establishing causation under Title VII announced by the Supreme Court in *Nassar* was significantly more stringent than the "motivating-factor" standard charged to the jury at trial. The Court found that *Nassar* applied retroactively and as a result, the motivating-factor standard charged to the jury at trial was contrary to the new law. *Sass*, --- F. Supp. 2d at ---, 2014 WL 585418, at *6. However, Defendant was found liable for retaliation under Title VII, the NYSHRL and the NYCHRL, (Trial Tr. 583:11–13, 617:18–618:2), and *Nassar* addressed only the standard for retaliation under Title VII. *See Nassar*, 570 U.S. at ---, 133 S. Ct. at 2533 (holding that "Title VII retaliation claims must be proved according to traditional principles of but-for causation").

The Court's charge to the jury on Plaintiff's retaliation claim explained that "Title VII, which is the Federal law, forbids an employer from retaliating against an employee for opposing any practice made unlawful under the Federal law. The state and the city laws each contain a similar provision, and therefore it won't be necessary for you to consider the laws separately." (*Id*. at 584:3–8.) The jury found that Plaintiff had proven that Defendant terminated him in retaliation for his protected activity, and that Defendant had not met its burden to show "by the

---

controlling law as to his NYCHRL claim has not changed. As discussed *infra* in Part II.c.i, because *Nassar* applies to Plaintiff's NYSHRL claim, Plaintiff could not prevail on his NYSHRL claim.

preponderance of the evidence that Defendant would have terminated Plaintiff, even if retaliation played no role in the employment decision." (Jury Verdict Sheet 1.) While *Nassar* changed the standard for establishing causation in a retaliation claim under Title VII, its impact on NYSHRL claims is unclear.

### i. NYSHRL claim

New York state courts have yet to directly address the impact of *Nassar* on the NYSHRL, and the Second Circuit has not addressed this issue in a reported opinion, although it has done so in several summary opinions. *See Rodas v. Town of Farmington*, --- F. App'x ---, ---, 2014 WL 2056325, at *1 (2d Cir. May 20, 2014) ("Because the same analysis applies to retaliation claims under the NYSHRL as under Title VII, we discuss these claims together." (citing *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)); *Giudice v. Red Robin Int'l, Inc.*, --- F. App'x ---, ---, 2014 WL 552668, at *2 (2d Cir. Feb. 13, 2014) (declining to address "any differences between the standard stated in *Summa* [holding that retaliation claims under Title VII and NYSHRL are analyzed in an identical manner] and the Supreme Court's articulation of the 'but-for' standard in *Nassar*); *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 n.7 (2d Cir. 2013) ("Because the plaintiff's claims survive under the *Nassar* 'but-for' standard, we do not decide whether the NYSHRL claim is affected by *Nassar,* which by its terms dealt only with retaliation in violation of Title VII."). In deciding a retaliation claim under the NYSHRL after *Nassar*, the First Department did not specifically decide the issue but noted that the plaintiff "will be unable to prove that the challenged failure to reassign occurred, *in whole or in part*, because of retaliation." *Simmons-Grant v. Quinn Emanuel Urquhart & Sullivan, LLP*, 981 N.Y.S.2d 89, 93 (App. Div. 2014) (emphasis added).

Traditionally, "[t]he standards for evaluating . . . retaliation claims are identical under Title VII and the NYSHRL." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*,

716 F.3d 10, 14 (2d Cir. 2013) (per curiam) (citing *Weinstock v. Columbia Univ.*, 224 F.3d 33,

42 n.1 (2d Cir. 2000)); *Vandewater v. Canandaigua Nat'l Bank*, 893 N.Y.S.2d 916, 917 (2010)

("It is well settled that the federal standards under [T]itle VII of the Civil Rights Act of 1964 are

applied to determine whether recovery is warranted under the Human Rights Law." (citing

*Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 330 (2004))).  The relevant provisions of

Title VII and NYSHRL are textually similar, and both prohibit an employer from discriminating

or retaliating against an individual "because" he or she engaged in protected activity.  In *Nassar*,

the Supreme Court held that under "the default rules" of statutory construction, "causation"

should be interpreted as "but-for causation" "absent an indication to the contrary in the statute

itself," and interpreted Title VII's use of "because" as requiring "proof that the desire to retaliate

was the but-for cause of the challenged employment action."  *Nassar*, 570 U.S. at ---, 133 S. Ct.

at 2528.

   Since the NYSHRL statutory language is the same, and the New York Court of Appeals

has consistently stated that federal Title VII standards are applied in interpreting the NYSHRL,

this Court has interpreted and will continue to interpret the standard for retaliation under the

NYSHRL in a manner consistent with Title VII jurisprudence, as clarified by the Supreme Court

in *Nassar*.  *See, e.g.*, *Bowen-Hooks v. City of New York*, --- F. Supp. 2d ---, ---, 2014 WL

1330941, at *24–25 (E.D.N.Y. Mar. 31, 2014) (applying but-for standard to plaintiff's retaliation

claims under Title VII and NYSHRL); *St. Juste v. Metro Plus Health Plan*, --- F. Supp. 2d ---, ---

, 2014 WL 1266306, at *25 (E.D.N.Y. Mar. 28, 2014) (same); *Joseph v. Owens & Minor*

*Distribution, Inc.*, --- F. Supp. 2d. ---, ---, 2014 WL 1199578, at *13 (E.D.N.Y. Mar. 24, 2014)

(same); *Russo v. New York Presbyterian Hosp.*, 972 F. Supp. 2d 429, 454–55 (E.D.N.Y. 2013)

(discussing post-*Nassar* retaliation standard under NYSHRL); *Dall v. St. Catherine of Siena*

*Med. Ctr.*, 966 F. Supp. 2d 167, 192 n.12 (E.D.N.Y. 2013) (interpreting the plaintiff's NYSHRL

retaliation claim consistently with his Title VII retaliation claim after *Nassar*); *Weber v. City of

New York*, 973 F. Supp. 2d 227, 266 n.22 (E.D.N.Y. 2013) (same); *Ellis v. Century 21 Dep't

Stores*, 975 F. Supp. 2d 244, 278 n.25 (E.D.N.Y. 2013) (same).

Other courts have done the same. *See, e.g.*, *Bethea v. City of New York*, No. 11-CV-

2347, 2014 WL 2616897, at *10 (E.D.N.Y. June 12, 2014) ("This Circuit, and its district courts,

has held that identical standards apply to state law discrimination and harassment claims and to

claims brought under Title VII." (addressing, *inter alia*, claim for retaliation)); *Leacock v.

Nassau Health Care Corp.*, No. 08-CV-2401, 2013 WL 4899723, at *9 n.4 (E.D.N.Y. Sept. 11,

2013) (continuing to construe the NYSHRL retaliation standard as requiring the same elements

as Title VII after *Nassar*); *Brown v. City of New York*, No. 11-CV-2915, 2013 WL 3789091,

at *19 (S.D.N.Y. July 19, 2013) (reviewing the but-for causation requirement for Title VII

retaliation articulated in *Nassar* and stating that the plaintiff's "retaliation claim under the

NYSHRL is analytically identical to her claims brought under Title VII" (alteration, citation and

internal quotation marks omitted)). Thus, the jury verdict under the NYSHRL cannot be

sustained based on the instruction given to the jury at trial.

### ii. NYCHRL claim

The provisions of the NYCHRL must "be construed liberally for the accomplishment of

the uniquely broad and remedial purposes thereof, regardless of whether federal or New York

State civil and human rights laws, including those laws with provisions comparably-worded to

provisions of this title have been so construed." *Mihalik v. Credit Agricole Cheuvreux N. Am.,

Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (quoting N.Y.C. Local L. 85 ("The Restoration Act") § 1).

Although neither the Second Circuit nor the New York Court of Appeals has directly addressed

whether the standard for establishing a claim of retaliation pursuant to NYCHRL has been

changed by *Nassar*, several New York State Supreme Court Appellate Division and district courts, including this Court, have found that the NYCHRL standard has not been changed by *Nassar.  See Calhoun v. Cnty. of Herkimer*, 980 N.Y.S.2d 664, 667–68 (App. Div. 2014) (stating plaintiff's burden of establishing causation in retaliation claim by showing that "the defendant was motivated at least in part by an impermissible motive"); *Brightman v. Prison Health Serv., Inc.*, 970 N.Y.S.2d 789, 792 (App. Div. 2013) (same); *Joseph*, --- F. Supp. 2d at ---, 2014 WL 1199578, at * 18 ("the but-for causation standard established in *Nassar* should not be applied to NYCHRL claims"); *Taylor v. Seamen's Soc. For Children*, No. 12-CV-3713, 2013 WL 6633166, at *23 (S.D.N.Y. Dec. 17, 2013) ("The 'but for' causation standard from *Nassar* applies to [plaintiff's] Title VII and NYSHRL retaliation claim, but not to her retaliation claim under the NYCHRL."); *Weber*, 973 F. Supp. 2d at 273 (noting that, to prevail on a retaliation claim under the NYCHRL, "[a] plaintiff must still establish that there was a causal connection between his protected activity and the employer's subsequent action, and must show that a defendant's legitimate reason for his termination was pretextual or 'motivated at least in part by an impermissible motive'" (quoting *Brightman*, 970 N.Y.S.2d at 792)); *Russo*, 972 F. Supp. 2d at 456 ("Since 'the NYCHRL has been amended to abolish the parallelism between the [NYCHRL] and federal and state anti-discrimination law,' and is interpreted according to its own rules of construction, the Court does not apply the *Nassar* but-for causation standard to Plaintiff's NYCHRL retaliation claim." (quoting *Noel v. BNY-Mellon Corp.*, 514 F. App'x 9, 11 (2d Cir. 2013))); *EEOC v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 851 (S.D.N.Y. 2013) ("[U]nder the NYCHRL, a jury could conclude that [defendant's] outburst was at least partially motivated by the ongoing lawsuit against [defendant] in which [plaintiff] was involved.").

In sum, the Court's findings in other cases, as well as the prevailing findings of other courts, is that the standard for showing causation for a retaliation claim under NYCHRL has not been changed by *Nassar*. Because this standard only requires a jury to find that retaliation was a motivating factor in Plaintiff's termination, Defendant cannot show that the Court's charge to the jury with respect to Plaintiff's NYCHRL retaliation claim was erroneous. Therefore the Court cannot conclude that the jury "reached a seriously erroneous result," or that there was an error in the jury instructions as to Plaintiff's NYCHRL claim. *See Snyder*, 486 F. App'x at 177.

The Court adheres to its previous ruling that *Nassar* applies retroactively to Plaintiff's Title VII claim. The Court also finds that *Nassar* applies retroactively to Plaintiff's NYSHRL claim. Under *Nassar*, the Court's "motivating-factor" instruction to the jury as to Plaintiff's Title VII and NYSHRL claims was contrary to the current law. However, the Court's instruction to the jury with respect to Plaintiff's NYCHRL retaliation claim was not erroneous. Defendant's motion for a new trial as to Plaintiff's NYCHRL claim is therefore denied.

Subsequent to trial, Plaintiff moved for reinstatement, back pay and past pension contributions. (Docket Entry No. 47, Plaintiff's Memorandum of Law in Support of Post-Trial Motion ("Pl. Post-Trial Mem.").) Because the Court previously granted Defendant's motion for a new trial, it denied Plaintiff's motion for post-trial equitable relief, attorney's fees and costs as moot. The Court *sua sponte* reconsiders Plaintiff's motion in light of its decision as to Plaintiff's NYCHRL claim and addresses each of Plaintiff's requests below.

### d. Plaintiff's request for reinstatement

Plaintiff argues that he is entitled to reinstatement. (Pl. Post-Trial Mem. 1–2.) Plaintiff concedes that if he is reinstated, he would not be entitled to judgment on the jury's award of front pay. (Pl. Post-Trial Mem 2 n.1.) Defendant opposes Plaintiff's motion for reinstatement on the ground that Plaintiff waived his right to seek reinstatement by (1) failing to include the

request for reinstatement in the pre-trial order, and (2) electing the remedy of front pay and advocating prior to trial that this remedy be decided by the jury. (Docket Entry No. 53, Defendant's Memorandum of Law in Opposition to Post-Trial Motion ("Def. Post-Trial Opp'n Mem.") 1–3.) Defendant also argues that New York courts disfavor equitable relief where damages are an adequate remedy, (Def. Letter dated April 18, 2014, Docket Entry No. 64, at 2), and at oral argument asserted that it appears that no court has awarded reinstatement under New York City Human Rights Law.

### i. Plaintiff has not waived his right to seek reinstatement by failing to include it in the pre-trial order

Defendant argues that Plaintiff waived his right to seek reinstatement by failing to include this form of relief in the pre-trial order, and by failing to submit to the Court "a detailed statement regarding damages and other relief sought," as required by the Court's Individual Rules. (Def. Post-Trial Opp'n Mem. 1–2.) Plaintiff sought reinstatement in his Complaint, (Compl., Docket Entry No. 1 at 7), but did not raise the issue of reinstatement until during the trial, (*see* Trial Tr. 304:14–307:9).

As an initial matter, Rule 54(c) of the Federal Rules of Civil Procedure provides that "[e]very . . . final judgment [other than a default judgment] should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings," suggesting that the Court is not bound by the parties' pleadings in determining what relief to award plaintiff. Fed. R. Civ. P. 54(c); *Pridgen v. Andresen*, 113 F.3d 1230 (2d Cir. 1997) (observing that the plaintiffs "correctly note that Fed. R. Civ. P. 54(c) authorizes a court to grant full relief, even if that relief is not requested in the complaint"); *see also Rocket Jewelry Box, Inc. v. Quality Int'l Packaging, Ltd.*, 90 F. App'x 543, 547 (Fed. Cir. 2004) ("[P]ursuant to Rule 54(c) of the Federal Rules of Civil Procedure 'every final judgment shall grant the relief to which the party in whose

favor it is rendered is entitled, *even if the party has not demanded such relief in the party's pleadings*.' Thus, whether or not [the plaintiff] had specifically requested it [in the joint pretrial order], the district court could grant the proper relief, including prejudgment interest and a permanent injunction." (quoting Fed. R. Civ. P. 54(c))).

Furthermore, Rule 16(e) of the Federal Rules of Civil Procedure provides that a court may modify a final pretrial order. *See* Fed. R. Civ. P. 16(e) ("The court may modify the order issued after a final pretrial conference only to prevent manifest injustice."). The Second Circuit has noted that a pretrial order is not "a legal strait-jacket binding the parties and court to an unwavering course at trial," and that "district courts have considerable discretion in the management of trials, and this necessarily includes a certain amount of latitude to deviate from the terms of a pretrial order." *Hogan v. Novartis Pharm. Corp.*, 494 F. App'x 132, 134 (2d Cir. 2012) (alteration omitted) (quoting *Manley v. AmBase Corp.*, 337 F.3d 237, 249 (2d Cir. 2003)). Factors a court must consider in deciding whether to modify a pretrial order include:

> (1) the prejudice or surprise in fact to the opposing party; (2) the ability of the party to cure the prejudice; (3) the extent of disruption of the orderly and efficient trial of the case; and (4) the bad faith or willfulness of the non-compliant party. Prejudice to the party seeking amendment or modification of the order is also relevant, as a trial court should not refuse to modify a pre-trial order where manifest injustice will result.

*Hogan*, 494 F. App'x at 134 (quoting *Potthast v. Metro-N. R.R. Co.*, 400 F.3d 143, 153 (2d Cir. 2005)).

As the Court noted during trial, Plaintiff's eleventh-hour renewal of the request for reinstatement as a form of relief is "equitable in nature and . . . an application that would have to be made to the Court," (Trial Tr. 307:8–9), therefore there was no prejudice to Defendant as

Defendant did not have to address the issue at trial.[2]  The application did not disrupt the "orderly and efficient trial of the case," as the issue was raised and addressed solely during colloquy. Moreover, Defendant has had an opportunity to fully brief its opposition to Plaintiff's request for reinstatement.  Because Plaintiff included reinstatement as a requested form of relief in the Complaint, raised the issue at trial, there was no prejudice to Defendants at trial, the relief is equitable in nature, and the parties fully briefed the issue through post-trial motions, Plaintiff did not waive his right to seek reinstatement by failing to include it in the joint pre-trial order under these circumstances.  *See Rocket Jewelry Box*, 90 F. App'x at 547 ("Rocket's failure to request a permanent injunction and prejudgment interest in the Joint Pretrial Order did not constitute a waiver of those claims.  To begin with, Rocket sought a permanent injunction in its amended complaint . . . ."); *W.R. Huff Asset Mgmt. Co., L.L.C. v. William Soroka 1989 Trust*, No. 04-CV-3093, 2009 WL 2436692, at *3 (D.N.J. Aug. 6, 2009) ("Nor does the absence of a specific claim in the pretrial order bar defendants from obtaining prejudgment interest."); *Iannone v. Frederic R. Harris, Inc.*, 941 F. Supp. 403, 413 (S.D.N.Y. 1996) (rejecting defendant's argument that punitive damages should not be awarded because it was not included in a pretrial order where "[t]he plaintiff included in the complaint a demand for punitive damages . . .  the defendant was fully prepared to litigate punitive damages at trial and was not prejudiced by being required to do so."); *accord Payne v. Univ. of S. Mississippi*, No. 12-CV-41, 2014 WL 1355449, at *2 (S.D. Miss. Apr. 7, 2014) ("Plaintiff now desires reinstatement to his position. Defendants argue that no such claim is properly before the Court because Plaintiff failed to plead it, but they have not

---

[2]  Although the failure to include the request in the pre-trial order led to some surprise during trial, the request was included in Plaintiff's Complaint and therefore Defendant had notice that this relief was sought by Plaintiff.

cited any authority holding that a plaintiff's failure to specifically request the remedy of reinstatement precludes its award." (citing Fed. R. Civ. P. 54(c))).

### ii. Submission of front pay claim to jury does not preclude reinstatement

Defendant argues that by advocating prior to trial that back pay and front pay be decided by the jury rather than by the Court sitting in equity, Plaintiff waived his right to seek reinstatement subsequent to trial. (Def. Post-Trial Opp'n Mem. 1–3.) Plaintiff argues that submitting the front pay issue to the jury did not divest the Court of its power to grant equitable relief under the NYCHRL. (Pl. Letter dated April 18, 2014 at 1.) Plaintiff cites to New York City Administrative Code § 8-502 in support of his argument that injunctive relief is available under the NYCHRL.[3] (Pl. Reply 2.) Plaintiff further argues that because under the NYCHRL the question of front pay is a question that must be decided by the jury, if Plaintiff had not submitted this question to the jury and the Court determined, subsequent to trial, that reinstatement was not warranted, Plaintiff would have been left without a remedy. (Pl. Letter dated April 18, 2014 at 12.)

Defendant argues that the Court should decide this issue consistent with *Beilan v. Sun Co., Inc.*, No. 88-CV-2085, 1990 WL 106581, at *2 (E.D. Pa. July 25, 1990), and find that "having gambled on a large front pay award from the jury, . . . [Plaintiff] should be found to have knowingly and deliberately waived his right to" seek equitable intervention from the Court. (Def. Post-Trial Opp'n Mem. 3.) In *Beilan*, the Court determined prior to trial that reinstatement

---

[3] Section 8-502 of the New York City Administrative Code provides that "any person claiming to be aggrieved by an unlawful discriminatory practice as defined in chapter one of this title . . . shall have a cause of action in any court of competent jurisdiction for damages, including punitive damages, and for injunctive relief and such other remedies as may be appropriate . . . ." N.Y.C. Admin. Code § 8-502.

was not a feasible option, and, therefore, "instructed the jury on the alternate remedy of front pay damages." *Beilan*, 1990 WL 106581, at *2. The court then rejected the plaintiff's post-trial argument that he was entitled to reinstatement, after the jury's determination that plaintiff was not entitled to *any* front pay damages.

Here, no determination was made that Plaintiff was not entitled to reinstatement, but when the issue was raised during a colloquy at trial, the Court noted that reinstatement was "not a relief that the jury can grant your client. . . .  [I]t is equitable in nature and it's an application that would have to be made to the Court." (Trial Tr. 307:6–9.)  Defendant did not object to this ruling. The jury also awarded Plaintiff front pay, in contrast to the jury in *Beilan*. Because the jury awarded Plaintiff front pay in this case, and because front pay and reinstatement can be considered equivalent ways to make a plaintiff whole, the Court retains discretion to order reinstatement, as an alternative to that front pay award. *Cf. Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001) ("[F]ront pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement.") (ADEA claim); *Bergerson v. N.Y.S. Office of Mental Health, Cent. New York Psychiatric Ctr.*, 652 F.3d 277, 287–88 (2d Cir. 2011) ("An award of front pay is an alternative to reinstatement where reinstatement is 'inappropriate,'" (quoting *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1182 (2d Cir. 1996) (ADEA claim); *Boodram v. Brooklyn Developmental Ctr.*, 773 N.Y.S.2d 817, 828 (Sup. Ct. 2003) ("In cases in which reinstatement is not viable . . . , courts have awarded front pay as a substitute for reinstatement." (quoting *Pollard*, 532 U.S. at 846)) (NYSHRL claim).  In light of the jury's verdict awarding Plaintiff front pay damages, Plaintiff's submission of the

front pay damages to the jury did not waive Plaintiff's right to subsequently seek reinstatement from the Court.[4]

### iii.   Plaintiff is not entitled to reinstatement

Although it is not clear whether the Court can award reinstatement under the NYCHRL where a jury awarded front pay, the Court need not decide the issue because, in any event, the Plaintiff is not entitled to reinstatement.[5]   Defendant opposes reinstatement, arguing that because

---

[4]   Defendant also cites to *Price v. Marshall Erdman & Associates, Inc.*, 966 F.2d 320 (7th Cir. 1992) and *Greenbaum v. Svenska Handelsbanken, N.Y.*, 979 F. Supp. 973 (S.D.N.Y. 1997) *modified on reconsideration*, 26 F. Supp. 2d 649 (S.D.N.Y. 1998) in support of its argument that Plaintiff elected the remedy of front pay and therefore cannot seek reinstatement.  (Def. Post-Trial Opp'n Mem. 4.)  In *Price*, the Seventh Circuit noted that if a plaintiff's "disinclination to return to working for his employer . . . is rational and sincere (rather than a maneuver to get front pay), it is a good reason for allowing the employee to elect his alternative remedy of front pay." *Price*, 966 F.2d at 325.  *Price* only stands for the principle that a plaintiff is entitled to front pay in lieu of reinstatement, not that he was required to elect the remedy of reinstatement prior to trial.  In *Greenbaum*, the court noted that Plaintiff did not pursue reinstatement until the jury declined to award her front pay, but the court accepted Plaintiff's argument that "such was the proper course of action because reinstatement is an equitable remedy that is properly taken up by the Court post-trial." *Greenbaum*, 979 F. Supp. at 987.  Thus, *Greenbaum* actually undermines Defendant's position.

[5]   At oral argument Defendant suggested that the NYCHRL does not authorize the Court to provide reinstatement, citing the absence of case law documenting the award of this form of equitable relief pursuant to the NYCHRL.  Plaintiff responded by noting that this fact is merely an artifice of the fact that, under state law, when both legal and equitable claims are combined in one action, the entire action is treated as an equitable one, and typically submitted to a judge as the trier of fact rather than to a jury.  The Court notes that the NYCHRL empowers the Commission on Human Rights ("Commission") to order the "hiring, reinstatement or upgrading of employees" upon finding that a respondent has engaged in an unlawful discriminatory practice, N.Y.C Admin Code § 8-120, and that numerous decisions by the Commission have done precisely this, *see, e.g.*, *Jaggi v. N.Y.C. Police Dep't*, OATH Ind. No. 1498/03, 2004 WL 5137598, at *2 (N.Y.C. Com. Hum. Rts. June 29, 2004); *Mittleman v. Pace Univ.*, No. EM7102287-DE 1991 WL 790580, at *20 (N.Y.C. Com. Hum. Rts. Mar. 29, 1991) ("Reinstatement is a proper remedy to make a complainant whole where, as here, it is requested and circumstances warrant it." (citing *Franks v. Bowman Transp. Co.*, 424 U.S. 747 (1976))); *cf. Manning v. Healthfirst LLC*, OATH Ind. No. 462/05, 2006 WL 4680497, at *2 (N.Y.C. Com. Hum. Rts. May 2006) (declining to order reinstatement as petitioner "would be unable to perform the duties of the position at her current level of disability").

Plaintiff made a false report and deliberately altered a document on the job, reinstatement is not an appropriate remedy, particularly where the jury has calculated and made an award of front pay damages. (Def. Post-Trial Opp'n Mem. 5–7.) Defendant points to the testimony of two witnesses at trial who testified about the harm caused by Plaintiff's alleged fabrication of evidence and false statements. (*Id.* at 6.) Plaintiff acknowledges that "[t]he two most common reasons to deny reinstatement is where there is too much animosity between the parties or where the position no longer exists," but states that "[n]either situation presents itself in this case." (Pl. Post-Trial Mem. 2.) Plaintiff argues that "[r]einstatement should be denied only [for] 'reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination.'" (*Id.* (citing *Greenbaum v. Svenska Handelsbanken, N.Y.*, 979 F. Supp. 973, 987 (S.D.N.Y. 1997), *modified on other grounds on reconsideration*, 26 F. Supp. 2d 649 (S.D.N.Y. 1998)).)

Plaintiff is correct that reinstatement is a preferred remedy in employment discrimination cases. *See Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 193 (2d Cir. 2011) ("[O]ur Circuit favors reinstatement as a remedy in employment cases generally."); *Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 230 (2d Cir. 2006) (observing that "[u]nder Title VII, the best choice is to

---

Defendant also asserts that "in the case of public employment, . . . a wrongfully discharged employee is generally restricted to a N.Y. C.P.L.R. Article 78 proceeding as the sole vehicle for seeking reinstatement to his or her position," (Def. Letter dated Apr. 18, 2014 at 1 (citing *Finley v. Giacobbe*, 79 F.3d 1285, 1291 (2d Cir. 1996)), and that the equitable remedy of reinstatement is disfavored by New York courts where a remedy at law, of damages, is adequate to make a plaintiff whole, (*id.* at 2 (citing *Zahler v. Niagara Cnty. Chapter of the N.Y.S. Ass'n for Retarded Children, Inc.*, 491 N.Y.S.2d 880 (App. Div. 1985)). The cases relied on by Defendant involved breach of contract claims, which is not the claim before the Court. Defendant's reliance on case law limiting specific performance in the context of breach of contract claims is inapposite here, where the remedy of reinstatement is an equitable remedy designed to redress statutorily-proscribed discrimination rather than a breach of contract claim.

reinstate the plaintiff, because this accomplishes the dual goals of providing make-whole relief for a prevailing plaintiff and deterring future unlawful conduct"); *Claudio v. Mattituck-Cutchogue Union Free Sch. Dist.*, No. 09-CV-5251, 2014 WL 1514235, at *3 (E.D.N.Y. Apr. 16, 2014) ("reinstatement is the preferred remedy for employment discrimination").

However, courts are hesitant to order reinstatement under certain circumstances, including "where there is animosity between an employer and an employee." *Bergerson*, 652 F.3d at 287–88; *see also Banks v. Travelers Cos.*, 180 F.3d 358, 364 (2d Cir. 1999) ("We have recognized . . . that reinstatement is not always feasible for instance . . . because animosity may impede the resumption of a reasonable employer-employee relationship."); *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 168–69 (2d Cir. 1998) ("Although the ADEA allows the court, in its discretion, to order reinstatement, which can serve to reestablish the prior employment relationship . . . and at the same time assure the plaintiff of employment free of discrimination . . ., the court may find that relief inappropriate if 'the employer-employee relationship may have been irreparably damaged'" (quoting *Padilla v. Metro–North Commuter R.R.*, 92 F.3d 117, 125 (2d Cir. 1996))); *Zhou v. State Univ. of New York Inst. of Tech.*, No. 08-CV-0444, 2014 WL 897042, at *13 (N.D.N.Y. Mar. 6, 2014) (denying reinstatement where, *inter alia*, "[o]n Plaintiff's part there is clear antipathy toward Defendant Langdon"); *Greenbaum*, 979 F. Supp. at 987 (denying reinstatement where, *inter alia*, "there was ample evidence adduced at trial that the rancor between plaintiff and her superiors in defendant's employ far predated this action").

A plaintiff's violation of company policy can be a reason for denying reinstatement. *See Zhou*, 2014 WL 897042, at *13 (denying reinstatement where, *inter alia*, "employees testified to their belief that Plaintiff provided fraudulent information to [defendant], either during the hiring

process or during the contract renewal application process"); *Picinich v. United Parcel Serv.*, No. 01-CV-01868, 2005 WL 3542571, at *27 (N.D.N.Y. Dec. 23, 2005) (denying reinstatement where plaintiff made secret tape recordings of conversations with defendant's employees, "threw [an] accommodations checklist form across the table," to one of defendant's employees, and "pushed pas[t] another employee"), *aff'd in relevant part*, 236 F. App'x 663 (2d Cir. 2007).

Here, Defendant presented evidence at trial that Plaintiff was terminated because he lied during an investigation and because he deliberately altered a document. (*See* Trial Tr. 474:18–477:20.) David Franchesini, the senior director of labor relations, described the charge leading to Plaintiff's termination, the making of a false report, which included Plaintiff's initially falsely stating the date on which he provided the document with the swastika superimposed on it to his supervisor, as constituting a breach of trust. (Trial Tr. 123:7–10; 124:23–25; 182:4–6.) Franchesini explained that this conduct was considered unacceptable in an agency that owes a duty to the public, and that the false statements made by Plaintiff during the investigation impaired his credibility in the eyes of management. (Trial Tr. 175:3–176:3; 184:19–21.) Robert Bruno, a deputy general manager, described the misrepresentation of a document as a "very serious offense within the [MTA]," and explained that his previously good perception of Plaintiff had changed as a result of this incident, because, "within our organization, we have a lot of stock on truth in reporting." (Trial Tr. 444:23–25; 452:20–24.) Under these circumstances, the jury's award of front pay is the appropriate remedy.[6] The Court awards $106,000 in front pay based on the jury's verdict.

---

[6] Plaintiff argued at oral argument that there is little evidence of animosity between Plaintiff and the MTA, and that, as a practical matter, all of the managers involved with the events leading to Plaintiff's termination are "gone," and a new set of managers are now working there. Defendant responded by noting that Robert Bruno, the assistant General Manager of the

### e. Back pay

#### i. Plaintiff's request to modify back pay

Subsequent to trial, Plaintiff moved the Court to exercise its equitable discretion under Title VII, to modify the jury's award of $252,300 in back pay and increase it to $290,859. (Pl. Post-Trial Mem. 4.) However, the jury's verdict is only valid as to Plaintiff's NYCHRL claim, and Plaintiff conceded that "the jury's verdict as to damages was advisory only with respect to Title VII," and not to the NYCHRL. (Pl. Post-Trial Mem. 5.) In light of the well-established principle that back pay, like all money damages, is considered to be a legal remedy under the NYSHRL, the Court treats back pay as a legal remedy under the parallel NYCHRL. *Cf. Chisholm v. Mem'l Sloan-Kettering Cancer Ctr.*, 824 F. Supp. 2d 573, 576 (S.D.N.Y. 2011) ("[A]ny form of money damages . . . is a legal remedy to be decided by the jury under the NYSHRL."); *Thomas v. iStar Fin., Inc.*, 508 F. Supp. 2d 252, 258 (S.D.N.Y. 2007) (noting that, while it was not clear whether the NYCHRL treated front pay as a legal or equitable remedy, "it would be difficult to reconcile a state law treating a remedy that derives from the state constitution (trial by jury) as legal and a city law in that state treating that same remedy addressing the same unlawful conduct as equitable"); *Shannon v. Fireman's Fund Ins. Co.*, 136 F. Supp. 2d 225, 228 (S.D.N.Y. 2001) ("New York courts have ruled that all money damage

---

facility who testified at trial, is still employed by MTA Bus, and that he was the individual who testified that he could never trust Plaintiff. Because Plaintiff's termination involved a violation of institutional policy and was considered by Defendant to be a breach of trust, the fact that particular managers may no longer be employed at the facility, or that there is no evidence of animosity between any specific individuals does not negate the reasons weighing against reinstatement. *See Shorter v. Hartford Fin. Servs. Grp., Inc.*, No. 03-CV-0149, 2005 WL 2234507, at *2 (D. Conn. May 31, 2005) (denying reinstatement and noting that "[i]t is clear to the Court that, though Plaintiff was liked and respected in his unit, corporate management's negative feelings about Plaintiff and this case would create an untenable relationship were he to return"), *supplemented*, No. 03-CV-0149, 2005 WL 2231599 (D. Conn. July 15, 2005)).

awards under the NYSHRL are legal remedies." (citing *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1189 (2d Cir. 1992) and *Murphy v. American Home Prods. Corp.*, 527 N.Y.S.2d 1, 2 (1988))); *see also Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992) ("[B]ecause Executive Law § 296 permits the recovery of monetary damages, claims made in federal court under this provision are characterized as legal in nature."). The Court declines to disturb the jury verdict awarding Plaintiff back pay in the amount of $252,300.

### ii. Defendant's request for an offset of back pay award

Defendant argues that the Court should offset the back pay award by the amount of $18,630 in unemployment benefits received by Plaintiff. (Def. Post-Trial Opp'n Mem. 9 (citing Trial Tr. 387–89); Def. Letter dated July 25, 2014, Docket Entry No. 66, 1.) Plaintiff argues that the court should apply the collateral source rule and decline to offset the back pay award, and contends that Defendant has not adequately substantiated its request for an offset. (Pl. Letter dated July 25, 2014, Docket Entry No. 68, 1–2.)

Many courts addressing the award of back pay in employment discrimination claims apply the collateral source rule to deny defendants' requests to offset plaintiffs' recovery of damages from an employer by the amount of unemployment benefits received by plaintiffs after their termination.[7] *See Clark v. Gotham Lasik, PLLC*, No. 11-CV-01307, 2013 WL 4437220, at *5 (S.D.N.Y. Aug. 20, 2013) ("While [the plaintiff] earned $14,750.00 in unemployment benefits, deduction of this amount is not warranted." (citing *Becerril v. E. Bronx NAACP Child Dev. Ctr.*, No. 08-CV-10283, 2009 WL 2611950, at *4 (S.D.N.Y. Aug. 18, 2009), *report and*

---

[7] The collateral source rule provides that a tortfeasor is not entitled to reduce its liability to an injured plaintiff by an amount paid by "collateral" sources. *See Oden v. Chemung Cnty. Indus. Dev. Agency*, 87 N.Y.2d 81, 85 (1995) ("Under traditional common-law principles, a personal injury award may not be reduced or offset by the amount of any compensation that the injured person may receive from a source other than the tortfeasor.").

*recommendation adopted*, No. 08-CV-10283, 2009 WL 2972992 (S.D.N.Y. Sept. 17, 2009) and

*Shannon*, 136 F. Supp. 2d at 232)); *Siracuse v. Program for the Dev. of Human Potential*, No.

07-CV-2205, 2012 WL 1624291, at *15 (E.D.N.Y. Apr. 30, 2012) (exercising discretion "in

favor of plaintiff and declin[ing] to impose an offset [to plaintiff's back pay award by the amount

received in disability benefits] that would merely reduce the amount that the employer is

required to pay for its unlawful conduct, resulting in a windfall for the very party found

responsible for plaintiff's damages."); *Norris v. N.Y.C. Coll. of Tech.*, No. 07-CV-853, 2009 WL

3841970, at *1 (E.D.N.Y. Nov. 18, 2009) ("[D]istrict courts of this circuit have generally

declined to make the deduction [of Title VII benefits from a back pay award] by invoking the

collateral source rule."); *Becerril*, 2009 WL 2611950, at *4 ("Since the [defendant] terminated

[the plaintiff's] employment wrongfully, it should not receive the benefit of having the plaintiff's

unemployment compensation deducted from her total back pay award."), *report and

recommendation adopted*, No. 08-CV-10283, 2009 WL 2972992 (S.D.N.Y. Sept. 17, 2009);

*Shannon*, 136 F. Supp. 2d at 232 ("A majority of the courts in this circuit have relied on th[e

reasoning of *Promisel*] in not deducting unemployment benefits from back pay awards."); *see

also Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 258 (2d Cir. 1991) (noting that

"[w]hile collateral source payments do represent an additional benefit to the plaintiff, . . . 'as

between the employer, whose action caused the discharge, and the employee, who may have

experienced other noncompensable losses, it is fitting that the burden be placed on the

employer'" (alteration omitted) (quoting *Maxfield v. Sinclair Int'l*,766 F.2d 788, 795 (3d Cir.

1985))).

The collateral source rule "is based on the reality that benefits paid by a third party — a

collateral source — will amount to a windfall for the plaintiff if they are not deducted, and for

the defendant if they are deducted." *Norris*, 2009 WL 3841970, at *1; *see also Shannon*, 136 F. Supp. 2d at 232 ("[B]ecause unemployment benefits are paid by a state agency rather than by [defendant] directly, either [plaintiff] or [defendant] will receive this 'windfall' no matter how the benefits are treated. . . . [F]airness dictates that the 'windfall' be awarded to the victim of the discrimination rather than the perpetrator."). Thus, where the payment of unemployment benefits is not from a "collateral" source such as a state-run unemployment insurance fund, but instead is paid directly (or "effectively") by the employer itself, several courts have declined to apply the collateral source rule. *See Stratton v. Dep't for the Aging for City of New York*, 922 F. Supp. 857, 866 (S.D.N.Y. 1996) ("The 'collateral source rule' does not apply here because the City of New York is the entity which effectively pays Plaintiff's unemployment compensation."); *Williams v. Sec'y of Navy*, 853 F. Supp. 66, 72 (E.D.N.Y. 1994) ("The source of federal employees' unemployment compensation is not collateral, but effectively is the federal employer.");[8] *see also EEOC v. Yellow Freight Sys., Inc.*, No. 98-CV-2270, 2001 WL 1568322, at *2 (S.D.N.Y. Dec. 6, 2001) (permitting defendant to introduce evidence at trial establishing its entitlement to an offset of back pay where the defendant had paid benefits directly to the plaintiff (citing *Stratton*, 922 F. Supp. at 866, *Williams*, 853 F. Supp. at 72 and *McLean v. Runyon*, 222

---

[8]  In both *Stratton v. Department for the Aging for City of New York*, 922 F. Supp. 857, 866 (S.D.N.Y. 1996) and *Williams v. Secretary of Navy*, 853 F. Supp. 66, 72 (E.D.N.Y. 1994), the employers were public entities that were not self-insured, but rather "effectively" paid an employee's unemployment compensation by reimbursing the state or federal unemployment fund that paid the plaintiffs' unemployment compensation. The principle underlying these cases is that, where the payment of a plaintiff's unemployment benefits was "effectively" made by the defendant, such benefits are not collateral to the defendant and thus not subject to the collateral source rule. *See Stratton*, 922 F. Supp. at 866 ("The 'collateral source rule' does not apply here because the City of New York is the entity which effectively pays Plaintiff's unemployment compensation."); *Williams*, 853 F. Supp. at 72 (noting that the collateral source rule "is not appropriate here. . . . The source of federal employees' unemployment compensation is not collateral, but effectively is the federal employer.").

F.3d 1150, 1155–56 (9th Cir. 2000); *cf. Norris v. New York City Coll. of Tech.*, No. 07-CV-853, 2009 WL 3841970, at *1–2 (E.D.N.Y. Nov. 18, 2009) (noting that "the rationale for the collateral source rule disappears when the employer itself is the source of the benefit — that is, where the source of the benefit is not 'collateral," but finding that the defendant was not the "source of the benefit" in that case (citation and internal quotation marks omitted)); *Hill v. Airborne Freight Corp.*, No. 97-CV-7098, 2003 WL 366641, at *2 n.3 (E.D.N.Y. Feb. 20, 2003) (applying collateral source rule to deny a deduction of unemployment benefits but noting that the Court's "decision regarding whether to deduct unemployment benefits from an award of back pay may have been different had the defendant been an entity, such as a public agency, that had effectively paid the benefit directly to the plaintiffs." (quoting *Williams*, 853 F. Supp. at 72)).

Defendant has provided documentation establishing that, while the New York State Department of Labor provided unemployment benefits directly to Plaintiff, Defendants reimbursed the Department of Labor in full for these payments.[9] (Def. Letter dated July 25, 2014 at 1; Declaration of Marlene Masiello ("Masiello Decl."), Docket Entry No. 67, ¶ 2.) Thus, like the defendants in *Stratton* and *Williams*, Defendant has "effectively" paid Plaintiff's unemployment benefits by reimbursing the state-run unemployment fund for the total amount of unemployment benefits paid to Plaintiff. *See Stratton*, 922 F. Supp. at 866 ("Plaintiff's unemployment benefits were paid directly to her by the New York State Department of Labor. However, the City of New York elects under New York Labor Law §§ 565.4 and 565.5 to make

---

[9]  Defendant also submits a declaration from Robert Finnegan, the Senior Director of Labor Relations for MTA Bus Company, stating that Plaintiff "received 46 weeks of unemployment benefits following his termination from MTA bus, at a rate of $405 per week." (, Declaration of Robert Finnegan in Opposition to Plaintiff's Motion for Post-Trial Relief ("Finnegan Decl."), Docket Entry No. 54, ¶¶ 2–3.)

payments for the unemployment compensation claims paid out to its former employees, rather than making contributions to the state unemployment insurance fund. The City is thus effectively responsible for paying Plaintiff's unemployment benefits."); *Williams*, 853 F. Supp. at 72 ("Pursuant to 5 U.S.C. § 8509 the Navy Exchange reimburses the Federal Employees Compensation Account in an amount equal to unemployment compensation paid to its employees. The source of federal employees' unemployment compensation is not collateral, but effectively is the federal employer.").[10]

Plaintiff argues that the district court cases that deduct unemployment benefits in this manner "elevate form over substance," and that the Second Circuit has never held that unemployment benefits must be deducted in situations such as this one, although it has held that whether to deduct for unemployment benefits is within the Court's discretion. (Pl. Letter dated July 25, 2014 at 1 (*citing Dailey v. Societe Generale*, 108 F.3d 451, 461 (2d Cir. 1997)).) Plaintiff argues that unemployment benefits are "like any other fringe benefit, earned by the employee and is part of the total employee compensation, even though it is paid by the employer." (*Id.*) Plaintiff notes that the New York State Department of Labor provides government employers with the option to either reimburse the state for benefits actually paid to former employees (the "benefits reimbursement method"), or to pay on a traditional contribution

---

[10] Defendant also cites *Simmons v. N.Y.C. Transit Authority*, No. CV-02-1575, 2008 WL 630056, at *1 (E.D.N.Y. Mar. 5, 2008), but in *Simmons* the court appeared to be summarizing a stipulation between the parties, rather than making a determination that unemployment benefits should be deducted. *See Simmons*, 2008 WL 630056, at *1 ("After the jury reached a verdict in favor of plaintiff, the parties entered into a stipulation in connection with the pensionable gross lost wages for the period January 16, 2001 through March 22, 2003. Gross wages in the amount of $97,099 are due to Simmons. Pension benefits will be calculated by the New York City Employee Retirement System and pension contributions will be deducted from the gross lost wages of $97,099. The gross wages are to be reduced by the $28,350 in unemployment compensation that Simmons received for a net back pay loss of $68,749.")

basis.  (*Id*. at 2 (citing New York State Department of Labor, *Benefit Reimbursement*, December 2013, annexed to Pl. Letter dated July 25, 2014 as Ex. 1 (*available at* https://labor.ny.gov/formsdocs/ui/IA318.13.pdf).)  Plaintiff contends that, regardless of what method Defendant chose to fund its unemployment obligations — either the benefits reimbursement method or a "contribution method" — the benefits were coming from a collateral source, the state Department of Labor, and it is illogical to prohibit those employers who choose the contribution method to deduct unemployment benefits under the collateral source rule, while permitting those employers who choose the benefits reimbursement method to do so.  (*Id*. at 1–2.)

The Court is not persuaded by Plaintiff's argument that the collateral source rule should be applied here because there is no crucial difference between an employer who chooses the reimbursement method and an employer who chooses a contribution method to meet their unemployment obligations.[11]  Because Defendants have "effectively" paid Plaintiff's

_____

[11]  The rationale underlying the application of the collateral source rule — that a defendant found liable for an unlawful employment practice should not be permitted to reap a windfall by allowing payments from a collateral source to reduce its own liability — is not implicated through the benefits reimbursement method in the same way that it is through a contribution method.  According to the New York State Department of Labor's benefit reimbursement explanation submitted by Plaintiff, the traditional contribution method is analogous to an insurance scheme, in which an employer pays a fixed percentage of its employees' qualifying salaries into the state fund each year.  Although the contribution rate reflects "the employer's experience in the unemployment insurance system," (meaning that a contribution rate will go up or down depending on the number of employees who are unemployed in the previous years), this method essentially results in an employer paying the same amount each year, regardless of whether or not any particular employee is receiving unemployment benefits.  While an employer who elects the contribution method would make the same insurance-type premium contributions to the state Department of Labor in any given year regardless of whether or not any particular employee was receiving unemployment, under the benefits reimbursement method, an employer only reimburses the state in the amount that the state actually pays to any given employee.  In the former scenario Defendant receives a windfall through a deduction because it would have paid essentially the same amount to the state

unemployment benefits by reimbursing the State Department of Labor for the actual benefits paid to Plaintiff, the collateral source rule does not apply and the jury's award of back pay should be offset by the $18,630 paid to Plaintiff in unemployment benefits.[12]

### f. Past pension contributions

Plaintiff seeks past pension contributions pursuant to his participation in a "defined benefit pension plan" as an employee with MTA Bus, and argues that "as part of its equitable relief, the Court should order [D]efendant to make payments into the plan sufficient to restore credit to [P]laintiff for his imputed earnings and years of service from October 19, 2009 and the effective date of reinstatement." (Pl. Mem. Post-Trial Mot. 5.) At oral argument, Plaintiff asked that if the Court were to decline to reinstate Plaintiff, it should order Defendants to restore Plaintiff's pension credits for the period between October 19, 2009, and the date of the jury's verdict. Counsel for Defendant did not oppose Plaintiff's application in principle. Accordingly, the Court orders Defendant to provide contributions to Plaintiff's pension plan and credit for the

---

Department of Labor regardless of whether or not Plaintiff had been terminated, and an offset serves only to reduce Defendant's total liability to Plaintiff; whereas in the latter scenario, Defendant is not receiving a windfall nor reducing its total liability to Plaintiff, but rather is simply receiving an offset for a payment that it would not have made to the state in the absence of Plaintiff's termination. *See E.E.O.C. v. Yellow Freight Sys., Inc.*, No. 98-CV-2270, 2001 WL 1568322, at *1 (S.D.N.Y. Dec. 6, 2001) (noting that the rationale of the collateral source rule "disappears, however, when the employer itself is the source of the benefit — that is, where the source of the benefit is not 'collateral.'").

[12] The Court is also unpersuaded by Plaintiff's assertion that the documentation submitted by Defendant establishing that it reimbursed the Department of Labor for Plaintiff's unemployment benefits is inadequate because it redacts the name of the employer. While 7 of the 12 benefit payment statements submitted by Defendant do appear to have redacted the name of the employer, the remaining 5 include Defendant's name, MTA Bus Company, and all 12 forms include the same "Employer Reg. No." (*See* Unemployment Insurance Division Benefit Payment statements, annexed to Masiello Decl. as Ex. 1.) Accordingly, the Court finds Plaintiff's argument as to the inadequacy of Defendant's documentation to be without merit.

corresponding years of service covering the period of time between Plaintff's termination, October 19, 2009, and the date of the jury verdict, June 20, 2013.

### g. Prejudgment interest

Plaintiff seeks an award of prejudgment interest on the jury award of back pay for the first time in his supplemental briefing.  (Pl. Letter dated April 18, 2014 at 2.)  Although the NYCHRL does not expressly provide for prejudgment interest on an award of backpay, the New York Court of Appeals has interpreted the analogous NYSHRL as doing so in stating that:

> Although the Human Rights Law, like [T]itle VII, makes no specific reference to pre-determination interest, a liberal reading of the statute is explicitly mandated to effectuate the statute's intent. Clearly, a central concern of the Human Rights Law is to make such victims "whole."  This Court has repeatedly acknowledged that as the purpose of an interest award.  Pre-determination interest awards are consistent with such concerns. This is so because an award of interest is often appropriate from the time at which a party was deprived of the use of money since without the addition of interest, the aggrieved party is not made whole.

*Aurecchione v. New York State Div. of Human Rights*, 98 N.Y.2d 21, 26 (2002) (citing *Loeffler v. Frank*, 486 U.S. 549, 558 (1988) (additional citations and internal quotation marks omitted); *see also Epstein v. Kalvin-Miller Int'l, Inc.*, 139 F. Supp. 2d 469, 486 (S.D.N.Y. 2001) (awarding prejudgment interest on back pay award under the NYSHRL).  This principle has been applied to awards under the NYCHRL.  *See Insinga v. Cooperatieve Centrale Raiffeisen Boerenleenbank B.A.*, 478 F. Supp. 2d 508, 512 (S.D.N.Y. 2007) (applying statutory interest rate of 9 percent to award of back pay under NYCHRL); *McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 672 N.Y.S.2d 230, 236 (N.Y. Sup. Ct. 1997) (same).  Therefore, Plaintiff is entitled to prejudgment interest.

Plaintiff and Defendant agree that the applicable prejudgment interest rate is 4 percent under New York Public Authorities Law § 1276, (Def. Letter dated July 25, 2014; Pl. Letter

dated July 25, 2014), and that this is calculated from an intermediate date between the date of termination and the date of judgment.[13] The Court applies this principle and concludes that the intermediate date between Plaintiff's date of termination, October 19, 2009, and the date of judgment, August 4, 2014, is March 12, 2012. Plaintiff is awarded prejudgment interest at the applicable statutory rate of 4 percent, calculated from the reasonable intermediate date of March 12, 2012.

### h. Attorneys' fees and costs

Plaintiff moves for attorneys' fees in the amount of $97,560 at the rates of $450 per hour for Michael O'Neill's time, $275 per hour for senior associates Theresa V. Wade and Aaron Solomon, and $175 per hour for junior associates Michael Ercolini and Emily Bertucci.

---

[13] New York state courts recognize that "courts may award prejudgment interest on awards of back pay in a case brought under the New York State Human Rights Law from the date that the plaintiff would have received the money." *Jattan v. Queens Coll. of City Univ. of New York*, 883 N.Y.S.2d 110, 113 (2009) (citing *Matter of Aurecchione*, 98 N.Y.2d at 21, and *Spodek v. Park Prop. Dev. Assoc.,* 96 N.Y.2d 577 (2001)). The applicable statute provides in pertinent part that:

> Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.

N.Y. C.P.L.R. § 5001(b). The New York State Supreme Court Appellate Division has applied § 5001(b) and determined that, for purposes of calculating prejudgment interest in an employment discrimination case pursuant to the NYSHRL, damages should be calculated "from a single reasonable intermediate date," which "would be the date halfway between the date the plaintiff was first deprived of a paycheck and the date of the verdict." *Jattan*, 883 N.Y.S.2d at 113; *see also Argyle Realty Associates v. New York State Div. of Human Rights*, 882 N.Y.S.2d 458, 468 (2009) ("Given that the complainant incurred damages for each pay period between her unlawful termination by Argyle Realty in November 1995 and her commencement of new employment in September 1996, it was proper to calculate interest from April 15, 1996, as a 'single reasonable intermediate date.'" (citing CPLR 5001(b) and *Matter of Boylan v. Town of Yorktown,* 579 N.Y.S.2d 126 (App. Div. 1992))).

(Declaration of Michael G. O'Neill in support of Post-Trial Motion ("O'Neill Decl.")) ¶ 13; Pl.

Mem. Post-Trial Mot. 8.)  Plaintiff also seeks costs in the amount of $3,109.21.  (O'Neill Decl. ¶

15.)

### i.  Attorneys' fees

The NYCHRL provides that "[i]n any civil action commenced pursuant to this section,

the court, in its discretion, may award the prevailing party costs and reasonable attorney's fees."

N.Y.C. Admin. Code § 8-502(f) provides:

> [A] reasonable attorney's fee is commonly understood to be a fee
> which represents the reasonable value of the services rendered.  In
> general, factors to be considered include (1) the time and labor
> required, the difficulty of the questions involved, and the skill
> required to handle the problems presented; (2) the lawyer's
> experience, ability, and reputation; (3) the amount involved and
> benefit resulting to the client from the services; (4) the customary
> fee charged for similar services; (5) the contingency or certainty of
> compensation; (6) the results obtained; and (7) the responsibility
> involved."

*Diaz v. Audi of Am., Inc.*, 873 N.Y.S.2d 308, 311 (App. Div. 2008) (citing *In re Freeman's*

*Estate*, 34 N.Y.2d 1, 9 (1974)) (additional citations omitted).

In this Circuit, when calculating reasonable attorneys' fees, courts must presumptively

apply the "forum rule," which provides that "courts should generally use the hourly rates

employed in the district in which the reviewing court sits in calculating the presumptively

reasonable fee."[14]  *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174–75 (2d Cir. 2009)

(citation and internal quotation marks omitted).

--------

[14]  While New York substantive law applies to the Court's calculation of attorney fees
under NYCHRL, the New York Court of Appeals has noted that the "attorney's fee provision [of
NYCHRL] is indistinguishable from provisions in comparable federal civil rights statutes,"
*McGrath v. Toys "R" Us, Inc.*, 3 N.Y.3d 421, 428–29 (2004), and has drawn from federal law in

If the party seeking attorneys' fees fails to submit evidence of the prevailing market rate for attorneys with comparable skills, the Court can exercise its discretion to determine a reasonable hourly rate. *See Moreno v. Empire City Subway Co.*, No. 05-CV-7768, 2008 WL 793605, *7 (S.D.N.Y. Mar. 26, 2008) ("[P]laintiff's counsel . . . has submitted no evidence of the prevailing market rate for attorneys of like skill litigating cases similar to plaintiff's . . . Thus, it is within my discretion to determine the reasonable hourly rate at which plaintiff's counsel should be compensated based on my familiarity with plaintiff's case and the prevailing rates in the Southern District."); *see also Stair v. Calhoun*, 722 F. Supp. 2d 258, 274 (E.D.N.Y. 2010) (same); *Trs. of the Local 813 Ins. Trust Fund v. Tres Chic*, No. 09-CV-5452 , 2010 WL 3782033, at *4 (E.D.N.Y. Aug. 16, 2010) (same), *report and recommendation adopted as modified on other grounds*, 2010 WL 3746942 (E.D.N.Y. Sept. 20, 2010). In addition, to obtain an award of attorneys' fees, the party seeking attorneys' fees must provide contemporaneous time records. *See Scott v. City of New York*, 643 F.3d 56, 58–59 (2d. Cir. 2011) (noting that attorneys' fees are "condition[ed] on contemporaneous records in all but the rarest of cases" (citation and internal quotation marks omitted)); *Green v. City of New York*, 403 F. App'x 626, 630 (2d Cir. 2010) ("the fee applicant bears the burden of establishing entitlement to an award and documenting the

---

addressing issues raised under the NYCHRL attorneys' fee provision, even subsequent to the amendment of the NYCHRL by the 2005 Restoration Act. *See Albunio v. City of New York*, --- N.Y.3d ----, ---, 2014 WL 1315667, at *4 (April 3, 2014) ("[T]he question before us implicates . . . the policy considerations underlying the award of counsel fees to prevailing civil rights plaintiffs under the NYCHRL. Federal case law can provide useful guidance in this respect since 'the attorney fee provision of the [NYCHRL] is similar to the fee provisions in the federal civil rights statutes.'" (quoting *McGrath*, 3 N.Y.3d at 426)); *see also Moore v. Houlihan's Rest., Inc.*, No. 07-CV-03129, 2011 WL 2470023, at *7 n.10 (E.D.N.Y. May 10, 2011) ("The Title VII and NYCHRL provisions are substantively and textually similar, therefore, the reasonableness of fees in this case would be analyzed the same regardless of which provision provides [plaintiff]'s recovery." (citing *McGrath*, 788 N.Y.S.2d at 281)), *report and recommendation adopted*, No. 07-CV-3129, 2011 WL 2462194 (E.D.N.Y. June 17, 2011).

appropriate hours expended" (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983))); *Pilitz v. Inc. Vill. of Freeport*, No. 07-CV-4078, 2011 WL 5825138, at *4 (E.D.N.Y. Nov. 17, 2011) ("[T]he party seeking an award of attorneys' fees must support its application by providing contemporaneous time records that detail 'for each attorney, the date, the hours expended, and the nature of the work done.'" (quoting *N.Y. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 48 (2d Cir. 1983))); *In re Phelan*, 570 N.Y.S.2d 202, 203 (App. Div. 1991) ("We have . . . repeatedly emphasized the significance of contemporaneously-maintained time records as a component of an attorney's affirmation of legal services . . . .").

"Recent opinions issued by courts within the Eastern District of New York have found reasonable hourly rates to be approximately $300–$450 for partners, $200–$325 for senior associates, and $100–$200 for junior associates." *Akman v. Pep Boys Manny Moe & Jack of Delaware, Inc.*, No. 11-CV-3252, 2013 WL 4039370, at *2 (E.D.N.Y. Aug. 7, 2013) (quoting *Pall Corp. v. 3M Purification Inc.*, No. 97-CV-7599, 2012 WL 1979297, at *4 (E.D.N.Y. June 1, 2012) (collecting cases)); *see also Konits v. Karahalis*, 409 F. App'x 418, 422 (2d Cir. 2011) (affirming district court award of attorneys' fees where lower court noted that "courts have found that the prevailing rates for experienced attorneys in Eastern District of New York cases range from approximately $300–400 per hour." (alteration omitted)); *In re Nassau Cnty. Strip Search Cases*, --- F. Supp. 2d ---, ---, 2014 WL 1338426, at *9 (E.D.N.Y. Apr. 2, 2014) (noting likely range of "$300 to $450 for a partner," providing "first rate" legal representation in a class action); *E. Sav. Bank, FSB v. Evancie*, No. 13-CV-00878, 2014 WL 1515643, at *5 (E.D.N.Y. Apr. 18, 2014) ("[I]n the Eastern District, reasonable hourly rates currently range from $200 to $400 for partners depending on the nature of the lawsuit."); *Brown v. Green 317 Madison, LLC*, No. 11-CV-4466, 2014 WL 1237448, at *9 (E.D.N.Y. Feb. 4, 2014) (noting cases in the Eastern

District where "lawyers with extensive experience were awarded fees at rates of $450 and $400 per hour"), *report and recommendation adopted*, No. 11-CV-4466, 2014 WL 1237127 (E.D.N.Y. Mar. 25, 2014).

Although the "size of the firm may be considered, as large firms tend to charge higher hourly rates than small firms, . . . courts should not automatically reduce the reasonable hourly rate based solely on an attorney's status as a solo practitioner." *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 299 (E.D.N.Y. 2012) (citing *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1059 (2d Cir. 1989) and *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 143 (2d Cir. 2007)). Courts in this district have awarded hourly rates ranging from $300 to $425 for experienced solo practitioners in civil rights cases. *See Struthers v. City of New York*, No. 12-CV-242, 2013 WL 5407221, at *7 (E.D.N.Y. Sept. 25, 2013) (collecting cases documenting awards in the range of $300 to $400); *Thorsen v. Cnty. of Nassau*, No. 03-CV-1022, 2011 WL 1004862, at *5 (E.D.N.Y. Mar. 17, 2011) (awarding $425 per hour to a solo practitioner, "a well known labor and employment attorney with 26 years of experience, who has appeared before this court numerous times"). The highest rates are "reserved for expert trial attorneys with extensive experience before the federal bar, who specialize in the practice of civil rights law and are recognized by their peers as leaders and experts in their fields." *Hugee*, 852 F. Supp. 2d at 300.

### 1. O'Neill's hourly rate

O'Neill contends that the "level and depth" of his experience justifies an award at the higher end of billing rates for partners in this district.[15] (Pl. Mem. Post-Trial Mot. 9.) Defendant

---

[15] O'Neill further contends that since Plaintiff's fee application for the state and city law claims are based on New York City Adminsitrative Code, "it stands to reason that the relevant

contends that an award "at the very top end of the range" is not appropriate for O'Neill because O'Neill's firm, being small in size, should have a lower rate as a result of having lower overhead costs, and the case itself was not particularly complex. (Def. Post-Trial Opp'n Mem. 11.) Defendant suggests that $350 per hour is a reasonable rate of compensation for O'Neill's time under these circumstances.

O'Neill is a solo practitioner who has been practicing law since 1980, 33 years at the time of trial, and has handled approximately 500 employment discrimination cases since the founding of his law firm in 1995. (O'Neill Decl. ¶ 6.) In a 2012 case, O'Neill was awarded fees at the rate of $300 per hour, in light of his status as a solo practitioner. *See Holness v. Nat'l Mobile Television, Inc.*, No. 09-CV-2601, 2012 WL 1744847, at *6 (E.D.N.Y. Feb. 14, 2012), *report and recommendation adopted as modified on other grounds*, No. 09-CV-2601, 2012 WL 1744744 (E.D.N.Y. May 15, 2012). In *Holness*, a civil rights case, the court cited "prevailing Eastern District rates of $300–400 for partners," lower than the range found by courts in this district in more recent cases, and did not cite cases establishing prevailing rates for experienced solo practitioners in civil rights cases. *See Holness*, 2012 WL 1744847, at *8. Rather, the court, noting that "the size and caliber of a firm may also be considered when determining a reasonable hourly rate," appeared to award attorneys' fee at the low end of the then-prevailing range of rates for all partners in the Eastern District of New York. *Id.* Mindful of both the higher range of rates specifically for solo practitioners experienced in civil rights, and that "courts should not

---

community for the City Law claim is New York City as opposed to the Eastern District," and that, because it "would make no sense for a resident of New York City to seek representation from attorneys in Nassau or Suffolk County," but instead from lawyers based in Manhattan, Manhattan rates should apply here. (Pl. Mem. Equitable Relief 10–11.) Defendant notes that Plaintiff is a resident of Nassau County, not the City. Plaintiff has not overcome the presumption that the forum rule applies to this action. *See Simmons*, 575 F.3d at 174.

automatically reduce the reasonable hourly rate based solely on an attorney's status as a solo practitioner," *Hugee*, 852 F. Supp. 2d at 281, the Court finds that O'Neill's 33 years of experience trying approximately 500 employment discrimination cases, and his skill as a civil rights attorney entitle him to a rate in the upper range of attorney's fees for experienced solo practitioners in civil rights cases. While $450 per hour is beyond this range, a fee of $425 is reasonable. *See Thorsen*, 2011 WL 1004862, at *5.

### 2. Solomon's hourly rate

Defendant opposes the requested rate of $275 for O'Neill's senior associate Aaron Solomon, contending that little information is provided regarding Solomon's experience. O'Neill states that Solomon graduated from law school in 2009, and was employed at O'Neill's firm from January 2013. (O'Neill Decl. ¶ 7.) Prior to that, Solomon "was employed by a busy litigation firm in Brooklyn and handled cases in both [f]ederal and [s]tate courts." (*Id.*) O'Neill does not state that Solomon's experience prior to joining O'Neill's firm was focused on employment discrimination. Even if an attorney with only four years of experience could accurately be described as a senior associate, the Court finds that an award at the lower end of the range for senior associates is appropriate. The rate for Solomon is reduced to $225 per hour.

### 3. Wade's hourly rate

Theresa V. Wade graduated from law school in 2007 and has experience litigating small and mid-sized employment discrimination cases in state and federal court, including serving as second chair in three trials in this district. (O'Neill Decl. ¶ 8.) The Court finds that the rate requested for Wade's time of $275 per hour is reasonable.

### 4. Bertucci and Ercolini's hourly rate

The rate requested for Bertucci and Ercolini, $175 per hour, is a reasonable rate for junior associates.

Having reviewed the time records submitted, the Court finds that the time spent by the attorneys is reasonable.[16]  Accordingly, the Court awards attorneys' fees in a total amount of $99,210, which award consists of: $78,200 for O'Neill's 184 hours at a rate of $425 per hour; $4,345 for Wade's 15.8 hours at a rate of $275 per hour; $12,780 for Solomon's 56.8 hours at a rate of $225 per hour; $1,435 for Bertucci's 8.2 hours at a rate of $175 per hour and; $2,450 for Ercolini's 14.0 hours at a rate of $175 per hour.

### ii.   Costs

The Court awards $3,109.21 as requested by Plaintiff for costs, including expenses for court costs, photocopies, messenger service, service of subpoenas and deposition reporters, for which he provides documentation.  (*See* O'Neill Decl. Ex. C.)

## III.   Conclusion

For the foregoing reasons, the Court grants Plaintiff's motion for reconsideration.  Upon reconsideration, the Court (1) adheres to its prior ruling granting Defendant's motion for a new trial as to Plaintiff's Title VII claim, (2) finds that Defendant is entitled to a new trial as to Plaintiff's NYSHRL claim, (3) denies Defendant's motion for a new trial as to Plaintiff's NYCHRL claim, and (4) grants in part and denies in part Plaintiff's motion for equitable relief, damages, attorneys' fees and costs.

The Court denies Plaintiff's application for reinstatement, and awards $106,000 in front pay as determined by the jury.  The Court awards Plaintiff  $252,300 in back pay as determined by the jury, but offsets that amount by $18,630 received by Plaintiff in unemployment

---

[16]  Counsel for Plaintiff submitted documentation for his own time as follows: 153.2 hours through trial, (O'Neill Decl. ¶ 14), 10.6 hours preparing the post-trial motion and the initial fee application, (*id*. ¶ 16), and 20.2 hours preparing supplemental post-trial briefing, a motion for reconsideration and oral argument, (Pl. Letter dated July 25, 2014), for a total of 184 hours.

compensation from Defendant, for a total back pay award of $233,670. The Court also awards

prejudgment interest on Plaintiff's back pay at the applicable statutory rate of 4 percent

commencing from the intermediate date of March 12, 2014. The Court awards attorneys' fees to

Plaintiff in the amount of $99,210, and expenses in the amount of $3,109.21.

SO ORDERED:


_____s/MKB_____
MARGO K. BRODIE
United States District Judge

Dated: August 4, 2014
       Brooklyn, New York